Ex parte Kartis EWING.

No. 58268.

Court of Criminal Appeals of Texas,
Panel No. 3.

Sept. 20, 1978.

Andrew L. Jefferson, Jr., Houston, for appellant.

None appearing for the State.

Before ROBERTS, ODOM and TOM G. DAVIS, JJ.

## OPINION

ODOM, Judge.

This is a post-conviction writ of habeas corpus filed pursuant to Article 11.07, V.A. C.C.P.

Petitioner was convicted of robbery by assault in a trial before a jury on a plea of not guilty on September 10 and 11, 1974. Punishment was assessed by the court at 10 years, and notice of appeal was given. The conviction was affirmed in *Ewing v. State*, Tex.Cr.App., 549 S.W.2d 392. A major issue in the appeal, the issue upon which the court was divided, was whether petitioner received effective assistance of counsel at his trial. In that opinion the majority stated:

"[W]e are not in a position to 'second guess', through appellate hindsight, the strategy adopted by counsel at trial. . . The fact that another attorney may have pursued a different tactical course of trial is insufficient to support a finding of ineffective assistance of counsel.

.     .     .     .     .

"We should not . . . attempt to ascertain the specific reason why counsel interrogated the arresting officers in the manner established by the record . . Our duty is to review the totality of the representation and determine whether the appellant has been denied his constitutional right to effective assistance of counsel."

By application for writ of habeas corpus filed in the convicting court on September 23, 1977, petitioner raised claims of ineffective assistance of counsel that will be detailed later in this opinion. The trial court denied petitioner's request for an evidentiary hearing on the issues and the record was forwarded to this Court. In a per curiam order filed in this case on November 2, 1977, this Court wrote:

"This allegation [of ineffective assistance of counsel] was raised on the direct appeal and rejected by this Court; however, this Court clearly pointed out, 'Finally, we are not in a position to "second

guess", through appellate hindsight, the strategy adopted by counsel at trial.' Because of the seriousness of the allegation, we feel that an evidentiary hearing should be conducted by the trial court to allow the issue of 'trial strategy' to be developed so that the proper determination of the issue of ineffective assistance of counsel shall be made. We observe that the determination of such question must turn upon the particular circumstances of each individual case. The constitutional right to counsel, whether the counsel be appointed or retained, does not mean errorless counsel whose competency or accuracy of representation is to be judged by hindsight. See *Ex parte Gallegos*, 511 S.W.2d 510 (Tex.Cr.App.1974); *Williams v. State*, 513 S.W.2d 54 (Tex.Cr.App.1974); *Rockwood v. State*, 524 S.W.2d 292 (Tex.Cr.App.1975).

"Since this Court does not hear evidence, *Ex parte Rodriguez*, 169 Tex.Cr.R. 367, 334 S.W.2d 294 (1960), this Court will hold the instant writ in abeyance and hereby order the trial court to conduct a fact finding hearing at the earliest practical time, make findings of fact and conclusions of law, and make the same returnable to this Court pursuant to Article 11.07, Vernon's Ann.C.C.P."

Thus, this Court directed that a record be developed for determination of the issue by post-conviction habeas corpus even though the issue had been decided in the direct appeal, because the record on appeal was not adequately developed. The record of the hearing directed in the per curiam order is before us, together with the trial court's findings of fact and conclusions of law, and we can now proceed to decide the issue with finality.

Petitioner's assertions of ineffective assistance of counsel that are before us in this cause rest on claims that counsel on numerous occasions failed to object to hearsay evidence at trial, and that counsel allowed introduction at trial of evidence of two extraneous offenses where there was no ground for their admission.[1]

Before these contentions regarding counsel's trial performance are addressed, a discussion of the standard for judging that performance is in order.

We begin with excerpts, omitting citations, from our opinion in petitioner's appeal, *Ewing v. State*, supra, at 395–396:

"For purposes of determining the effectiveness of an attorney's representation, we have adopted the 'reasonably effective' assistance of counsel standard for use in this jurisdiction. We have also formulated reasonable and flexible rules in order to guide our application of this standard.

"First, the sufficiency of an attorney's assistance must be gauged by the totality of the representation of the accused. In our system of criminal justice an individual is entitled to a fair but not a perfect trial. Isolated failures to object to certain procedural mistakes or improper evidence do not constitute a breach of legal duty by an accused's attorney.

"We also observe that assertions of ineffective counsel shall be sustained only if they are 'firmly founded.' The record must affirmatively demonstrate the counsel's ineffectiveness.

"Finally, we are not in a position to 'second guess,' through appellate hindsight, the strategy adopted by counsel at trial. Trial lawyers occupy the realm of the here and now; they do not possess the luxury of a record to review, nor are they given time to formulate solutions to

---

1. In his application for habeas corpus petitioner also raised one attack based on counsel's pretrial preparation and raising an issue of whether he had retained Mary Edwards, who represented him at trial, or her husband Titus Edwards. This issue was resolved by the trial court's findings and has not been asserted in this Court. Although no briefs have been filed, oral argument was presented, and only trial performance was attacked. Furthermore, the order of this Court for an evidentiary hearing was directed solely to the issue of trial performance. Accordingly, pretrial preparation is not in this case, except insofar as it contributes to resolution of the trial performance issue.

complex procedural or evidentiary issues in the midst of trial. The fact that another attorney may have pursued a different tactical course of trial is insufficient to support a finding of ineffective assistance of counsel.

" * * * Furthermore, the failure to object to every instance of improper evidence does not mean that appellant's representation was ineffective.

" * * * Our duty is to review the totality of the representation and determine whether the appellant has been denied his constitutional right to effective assistance of counsel."

It has been urged that effectiveness of retained counsel and appointed counsel should be judged by the same standard. We will begin examination of this proposition with a look at *Fitzgerald v. Estelle*, 505 F.2d 1334 (5th Cir. 1974, en banc), cert. den., 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675, in which the issue was discussed at length. The first distinction drawn in that case was between the Fourteenth Amendment due process clause standing alone and the Sixth Amendment right to counsel incorporated in Fourteenth Amendment due process. It was that court's conclusion that "whenever a lawyer's ineffectiveness has rendered a trial fundamentally unfair, whether he be retained or appointed and whether his action or inaction was known or unknown to state trial officials, a deprivation of Fourteenth Amendment due process results from enforcement of the resultant judgment." Distinguishing the incorporated Sixth Amendment standard from the standard of due process alone, the court stated that "the standard of reasonably effective assistance of counsel . . . covers a greater range of counsel errors than does the fundamental fairness standard."

The *Fitzgerald* court held that the reasonably effective assistance of counsel standard applies to both appointed and retained counsel, yet the test for deprivation of the constitutional right requires a showing of state action *in addition to* a showing of services below the "reasonably effective assistance of counsel" standard. That court

wrote, "The circumstances in which the state will be *bound* by *retained* counsel's *failure to meet* the Sixth Amendment standard of effectiveness . . . must be assessed more strictly . . . ." (Emphasis added). The test for relief for ineffective assistance of counsel thus consists of two parts: performance below the Sixth Amendment standard and state action.

For retained counsel, the Fifth Circuit adopted this test for the state action requirement:

"To find state involvement in retained counsel's conduct which is adjudged to be less than reasonably effective . . . it must be shown that some responsible state official connected with the criminal proceeding who could have remedied the conduct failed in his duty to accord justice to the accused. That the trial judge and the prosecutor have such a capacity and duty is unquestionable. Therefore, if the trial judge or the prosecutor can be shown to have *actually known* that a particular defendant is receiving incompetent representation and takes no remedial action, the state action requirement is satisfied. If they directly participate in the incompetency, it is even more so. Furthermore, if the incompetency of a retained attorney's representation is *so apparent* that a reasonably attentive official of the state *should have been aware of* and could have corrected it then again the state action requirement is satisfied." (Emphasis added.)

Thus, state action may be shown by actual or constructive awareness by the court or prosecutor of retained counsel's less than reasonably effective assistance. The great difficulty in applying this test is introduced by the trial strategy and tactics factor. It is to be presumed that the trial judge is fully aware of the actual performance of retained counsel in the courtroom, but how is the trial judge to weigh that performance in light of possible defense strategy and tactics? The *Fitzgerald* opinion also recognized this problem, and stated that interrupting the trial to question retained counsel about his strategy and tactics would

often be counterproductive for the defendant.

We agree that to secure relief for ineffective assistance of retained counsel there must also be an adequate showing of state action by failure of a responsible state official connected with the criminal proceeding (such as the trial judge or prosecutor) to take corrective action when that official had actual or constructive knowledge of retained counsel's failure to deliver reasonably effective assistance. The trial judge ordinarily should not interfere with the attorney-client relation by inquiring into the matter of strategy and tactics.[2] Such an inquiry should be made only if from all appearances there could be no plausible basis in strategy or tactics for counsel's actions, and then the inquiry should be made out of the presence of the jury and of the prosecutor. A reply by counsel that his actions are based on strategic or tactical considerations that will become apparent later in the trial should satisfy the court's inquiry, and counsel should not be required to reveal his strategy and tactics at that time. Full inquiry should be made only if after the trial from all appearances there still is no plausible basis in strategy or tactics for his actions. In this case, "because of the seriousness of the allegation" of ineffective assistance of counsel in trial performance, we ordered just such an inquiry into counsel's trial strategy.

We turn now to the facts of this case. Petitioner first complains of counsel's failure to object to hearsay statements by some witnesses. The answers were not particularly prejudicial to petitioner, and as pointed out by trial counsel when she testified at the hearing, they tended to show contradictions between witnesses for the State. We hold the failure to object to these answers was not conduct requiring the trial court to intervene and take corrective action, nor was it below the standard of reasonably effective assistance.

The other conduct complained of by petitioner is the introduction of extraneous matters indicating that he was suspected of two burglaries before the robbery for which he was being tried. These matters were developed by defense counsel during cross-examination of two State's witnesses. First we set out the cross-examination of officer Cashion:

"Q. You had had a make previously on this car [appellant's car used in the robbery] what do you mean?

"A. We had picked it up for investigation of a burglary.

"Q. This car?

"A. Yes, ma'am.

"Q. When?

"A. Back on the 25th of November, 1973.

"Q. Was Mr. Ewing involved?

"A. Yes, ma'am, he was.

"Q. You say Mr. Ewing was involved in a burglary?

"A. We are saying we questioned him about a burglary.

"Q. Was his car involved in a burglary? Was it positively—

"A. We had it picked up for investigation of a burglary.

"Q. Was it positively identified as being involved in the burglary?

"A. Not at that time it wasn't. It was at the scene, though.

"Q. Was Mr. Ewing in the car on the 25th?

"A. No, ma'am; he wasn't in the car.

"Q. All right. Then had the car been reported for any reason prior to the 25th?

"A. No, ma'am, sure hadn't.

"Q. Officer, are you telling me that you never had a stolen car report on this brown Chevrolet, '67, with this license number reported to you before?

"A. No, ma'am; sure not."

2. The trial judge exhibited a sensitivity to this principle when at the hearing he stated: "I was concerned at the time of the trial, and I spent some little time concerning the law, because it is a gray area as far as I am concerned, as the court has held, the matter of trial strategy of employed counsel, how far do you let them go. I recognized at that time in my mind, but who am I to second guess what another lawyer is doing?"

The other testimony regarding the burglaries was elicited on cross-examination of officer Davis:

"Q. How did you happen to go to Ringold and Prosper [where he arrested petitioner who was driving the Chevrolet automobile]?

"A. First of all, we had a license plate number. I asked the dispatcher—I can't remember which one of us did—got on the radio and got him to trace the registration on the car and it was registered to one Chris LeBlanc who lived on—I can't remember the exact number. I think it is 1046. It was at about the intersection of Wheatley and South Victory. We proceeded to that house and talked to Chris LeBlanc's mother who stated that her son had sold the car to Mr. Ewing, I think, two months earlier.

We then asked her if she knew where he lived. I can't remember whether she knew where he lived or not. From her house I called the burglary and theft division because we had the same car with the same license number towed off on the 28th from the scene of a burglary. Down at burglary they have a little card that stated who claimed the car. We put a 'hold' on the car for burglary and theft and before the man who wanted the car could get it out—it was out at the prisoner's lot is where it was—before he could get it released, he would have to get a release from the burglary and theft division and have to prove by means of registration that it was his car and prove who it was and it turned out it was the Defendant, Kartis Ewing, that got the car released from the burglary division.

"Q. Did you find out that this car had actually been involved in a burglary?

"A. Did I find out it was? We believed that it was but we were not sure. We also apprehended Mr. Ewing at the scene of a burglary but since the car that we found there was a suspicious car, the only car there, it was some model homes, there was one or two trucks that blocked—I don't remember who built— let's say Suburban Homes, everybody knows them—one of the Suburban Company trucks were there and there was a passenger car parked on the other side of the lot. We had it picked up and towed off in case it was. Then I saw Mr. Ewing walking down toward the freeway shortly after we had made the burglary call there and so I arrested him for suspicion then but he was released at the scene since the car was not registered to him at that time.

"Q. You never took him to the police department?

"A. Not on the burglary we didn't. We didn't have enough evidence to think that we could.

"Q. Did you find that the car had been reported stolen?

"A. No, ma'am; it hadn't been reported stolen."

Later in defense counsel's examination of officer Davis, evidence regarding a second burglary was elicted. Counsel was questioning the officer regarding the absence of a booking photograph to contradict the testimony about how petitioner was dressed on the night of the offense and arrest, and the officer stated a photo was likely already on file from a previous booking. Counsel responded:

"Q. You told me he was not handled for burglary?

"A. He was picked up for suspicion of burglary the 15th of November for burglary of an apartment. He has the I.D. number from that case.

"Q. You told me you didn't take him—

"A. This is not the same burglary, this is another burglary. This is on the 15th. The time we picked him up that we arrested him at the scene was the 25th of November. On the 15th of November he was also handled by another set of officers for burglary of an apartment but he was released with no charges. . . ."

The first sequence was deliberately elicited by counsel from Cashion as part of her theory of defense: she showed that petitioner's car was located near the scene of a

burglary, but that petitioner was not in the car, and that he was questioned but not held. The second sequence appears to be repetition of the first, although the dates of the 25th and 28th are at variance. The third sequence presented an obvious surprise to counsel that her client had been arrested in connection with a second, earlier burglary.

Trial counsel gave some testimony at the hearing regarding her trial strategy in this matter, but was limited in fully disclosing that strategy by petitioner's refusal to waive his attorney-client privilege. From what was revealed at the hearing, it appears that counsel was told by petitioner that before his arrest for the prosecuted robbery he had never been arrested, nor had he been the subject of police investigation. It also appears that petitioner told counsel his car, the one involved in the robbery, had been stolen from him several days before the burglary and was subsequently recovered by him.[3]

On the basis of these representations by petitioner to his attorney, it appears counsel was attempting to present to the jury evidence that would support the testimony petitioner was expected to give later in the trial: that his car had been stolen and was recovered by the police at the scene of a burglary, likely committed by the auto thief. To have police corroboration of defense testimony would boost his credibility.

The evidence of the second, earlier burglary investigation involving petitioner surfaced unexpectedly in the midst of an attempt to weaken the state's case by showing its failure to present photographic evidence of petitioner's dress on the night of the offense, evidence presumably in the State's possession. How he was dressed and how the hitchhiker upon whom he placed the blame was dressed were issues in the case going to the credibility of the eye-witnesses' identification. Counsel questioned the failure to present the booking

photograph from petitioner's arrest for the robbery, only to discover that he had previously been handled for burglary.

Of course, counsel should make an independent investigation of the facts surrounding the allegations against his client, and not rely exclusively upon the client's version of what happened. The existence of a police record, however, is not the kind of fact that may have different versions depending on the witness being asked: it is a matter of record and generally not subject to dispute. While this makes it a relatively simple matter to conclusively verify or refute the client's representation, by the same token it also should make the client's statement, given to his attorney to aid in preparation of his defense, worthy of belief by the attorney, since there can be no motive for gain and only cause for harm to be expected from giving false information, in that the truth inevitably will come out.

■ Wholly apart from counsel's duty to investigate the facts surrounding the offense independently of the client's version, we find different considerations dictate our conclusion about investigating a client's statement that he has no police history. If the client falsely tells his attorney he has no record, he may not later claim that his own lies have caused him to suffer ineffective assistance of counsel. He may not set up counsel for later attack by such device. To hold otherwise would reward those who frustrate the attempts to render them assistance, and discourage the open and honest communication that is necessary if counsel is to have the information necessary to defend. We hold petitioner was not denied effective assistance of counsel where counsel was pursuing a plausible defense strategy when she was surprised by revelations of petitioner's prior police encounters which he had told her did not exist.

■ With regard to counsel's failure to object to the extraneous matters once they surfaced, and to request the jury be

---

3. At his trial petitioner testified he had reported his car stolen before the more recent of the two burglaries. He also admitted his presence at the scene of the robbery and possession of

the car that night, but placed guilt on an unknown hitchhiker he had brought to the shop where the robbery was committed.

instructed to disregard, we hold the prejudicial impact was not of a sufficient degree to constitute ineffective assistance of counsel. Cf. *Ruth v. State*, Tex.Cr.App., 522 S.W.2d 517, 519 (concurring opinion). It is well established that failure to object to admission of extraneous offenses waives the objection and presents nothing for review, e. g., *Boatright v. State*, Tex.Cr.App., 472 S.W.2d 765; *Hanney v. State*, Tex.Cr.App., 472 S.W.2d 776, and that a defendant may not complain of evidence elicited by his own attorney, e. g., *Mason v. State*, Tex.Cr.App., 472 S.W.2d 787. We decline to hold that such actions which waive evidentiary grounds may automatically be transformed into grounds for relief for ineffective assistance of counsel.

We hold petitioner has not established that he was denied reasonably effective assistance of counsel and it is unnecessary to discuss application of the state action requirement to the facts of this case.

Relief is denied.