.James Allen GRAUE, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00228–CR.

Court of Appeals of Texas, San Antonio.

Jan. 10, 1990.

Edward Camara, Jr., San Antonio, for appellant.

Fred G. Rodriguez, Michael Grandos, Christopher DeMartino, and Edward Shaughnessy, III, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

This is an appeal from a conviction for the offense of attempted capital murder. A jury found the appellant guilty and assessed punishment at thirty years' confinement.

The dispositive issue before this court is whether the trial court committed reversible error by permitting the prosecutor to elicit testimony from the complainant regarding prior threats against him by appellant's defense counsel. TEX.R.APP.P. 90(a). We reverse and remand.

The complainant Michael Sawyer, a former prosecutor, testified that on July 31, 1987, at approximately 11:00 P.M., he heard a knock at his front door. He walked to his dining room and, looking out the double windows, attempted to look out onto his front porch area. He could see a person standing just off the front porch. Thinking it was a neighbor, he opened the front door to appellant who said," I've been in a car wreck. I need to use your telephone." Complainant became suspicious because he saw no wrecked cars on the road. Appellant said that he was a friend of the complainant's son, although his son had been dead for over a year. Appellant then lowered his shoulder, moved toward the doorway, and raised a gun up toward the complainant's face. Complainant grabbed the

gun as he heard appellant say, "I'm going to kill you." They struggled, and the gun went off by complainant's face. Complainant then pushed the gun down and it fired again. They broke apart and the complainant ran to his room to get his gun. He returned to the living room, saw appellant in the doorway and fired a shot but missed him. Appellant ran away as the complainant fired and missed again.

Deborah Fisk, a former girlfriend of Kevin Veschi, a co-defendant, testified that around August 1, 1987, Veschi came to see her in Houston and brought appellant and Ronnie Sutton. She testified that she was present with Veschi, Sutton and appellant when Veschi stated that "they were there because [appellant] had shot [the complainant]," and "they were there to hide out for a few days." There was further evidence that Veschi told her that appellant and Sutton had committed the crime but that he [Veschi] had set it up.

Victor Flores, Jr., a police officer with the San Antonio Police Department, testified that he was on duty the night in question and received a call around 11:20 P.M. about the shooting. He testified that he found what appeared to be a .38 or .357 caliber slug in a room in the complainant's home.

Lori Ermis was with Veschi on July 31st at her house. She stated that Veschi was with Sutton and appellant. She testified that she saw the gun identified as State's Exhibit number 4 in the possession of Veschi and appellant both before and after July 31st.

Geoffrey Neistedt testified that he contacted Veschi and purchased a handgun from him on August 16, 1987. He identified the exhibit as the gun he purchased from Veschi.

Richard Stengel, a firearms and tool mark examiner at the Bexar County Regional Crime Laboratory, testified that the bullet found at the complainant's home was fired from the gun identified as State's Exhibit number 4.

Appellant contends that the trial court erred in permitting the prosecutor to elicit testimony from complainant regarding a prior threat by defense counsel against him. He urges that the trial court permitted the prosecutor "to strike at the appellant over the shoulders of his attorney."

Appellant's complaint is based on examination of the complainant by the State during re-direct examination:

Q. Mr. Sawyer, you were a Prosecutor in the District Attorney's Office, were you not?
A. Yes, I was.
Q. For how long?
A. About five years.
Q. These words mean anything to you, "Whatever it takes, you'll pay?"
A. I thought about it. Yes.
Q. Were you a prosecutor when you heard those words spoken?
A. Yes, I was.
Q. Who spoke those words?
A. Mr. Camara.
Q. Is that in relation to—
Mr. Camara: Objection, your Honor.
The Court: It's overruled.
Mr. Camara: Let me state my objection.
The Court: State it. You said, "Objection," and you didn't say anything. That's overruled.
Mr. Camara: I was rising, your Honor.
The Court: Okay. Sorry.
Mr. Camara: I object to the fact that the prosecutor, it appears is forming some sort of attack on me in order to get at the defendant, and he's going over my shoulders to harm the defendant.
The Court: It's overruled.
Q. Is that spoken in relation to your official duties as a prosecutor?
A. We were prosecuting a case against a person charged with a habitual case. Mr. Camara was on the other side, and we were prosecuting.

. . . .

Thereafter defense counsel attempted to mitigate the damage by the following questions to the complainant on re-cross examination:

Q. Mr. Sawyer, we were—you were prosecuting a case against a habitual offender that I defended?

A. Yes.

Q. Okay. And do you recall what the name of that case was?

A. I'm thinking it was Floyd Miller Myers. I could be wrong.

Q. I think you're probably right. But do you remember the result of that case?

A. Got a conviction, it was later on reversed.

. . . .

Q. And the result of that case, where the jury threw out the habitual count, they gave the guy 18 years?

A. That's correct.

Q. And you were trying to tell this jury that I have some sort of grudge against you because of that?

A. I don't know that you have a grudge against me, Mr. Camara.

Q. Is that what you're trying to tell me?

A. No.

Q. Is that what he's trying to allude to?

A. He asked me a question. I just answer it.

Q. Tell me this, Mr. Sawyer: Would you consider an 18–year sentence in a habitual case a loss?

A. For me. No.

Q. Any other cases I've tried against you?

A. During the time I was a prosecutor, we've tried several cases.

. . . .

The Texas Court of Criminal Appeals has repeatedly condemned such unnecessary and unjustified actions on the part of the prosecution.

In *Summers v. State*, 147 Tex.Crim. 519, 182 S.W.2d 720 (1944), the court reversed a conviction for assault with intent to commit rape because in argument, the prosecution criticized defense counsel for having once represented another individual who had as-saulted a prohibition leader. The court expressed its complete disapproval by stating:

Just what the purpose of the Assistant District Attorney was other than to inflame the minds of the jury and prejudice them against the appellant, we are unable to understand. By this argument the prosecuting attorney was striking at the appellant over the shoulders of his counsel in an endeavor to inflame the minds of the jury to his prejudice. The accused is entitled to a fair trial without reference to outside influence.

*Summers v. State*, 182 S.W.2d at 721, 722.

In *Bray v. State*, 478 S.W.2d 89 (Tex. Crim.App.1972), the court reversed a conviction for robbery by assault because in argument, the prosecutor expressed gratitude that he did not have to make a living representing people like the appellant. Writing for the court, Presiding Judge Onion reiterated the court's concern for such actions on the part of the prosecution repeating the same language found in *Summers, supra*. To further emphasize the degree of harm such actions bring upon an appellant, the court said:

If it can be argued that the error was not properly preserved, we conclude that an instruction to disregard would not have sufficed to have removed the prejudice.

Trial courts should assume the responsibility of preventing this type of argument. A rebuke by the trial court in the presence of the jury may do more to end this practice of intemperate and improper argument than repeated admonitions and even reversals by this court.

*Bray v. State, supra* at 90.

In *Edmiston v. State*, 520 S.W.2d 386 (Tex.Crim.App.1975), the court clearly denounced actions of the prosecution designed to harm the appellant by attacking the appellant's defense counsel in areas other than in argument. The court reversed a conviction of distribution of an obscene magazine because the "prosecutor struck at [the appellant] over the shoulder of his attorney by eliciting testimony that the attorney representing him in this trial had a financial interest in the theatre

where the undercover agent purchased the obscene magazine." *Edmiston* at 387. Again emphasizing the extent of the damage to an appellant under such circumstances, the court stated:

In the case before us the appellant's objection was sustained, and the court instructed the jury to disregard the question and answer which elicited evidence that the lawyer retained by the appellant had a financial interest in the theatre where the obscene magazine was sold. The court overruled a motion for mistrial. An instruction to disregard will cure error except in extreme cases where it appears the evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds. *Christ v. State,* 480 S.W.2d 394 (Tex.Crim.App. 1972); *Ortiz v. State,* 490 S.W.2d 594 (Tex.Crim.App.1973); *Stokes v. State,* 506 S.W.2d 860 (Tex.Crim.App.1974).

Here the prosecutor deliberately asked a question which was not material to the issues in the case being tried. The testimony if true showed the appellant's attorney may have been guilty of the same criminal offense for which his client was being tried. This evidence appears to be more harmful to the appellant here than the argument made by the prosecutor was to the defendant in *Bray v. State, supra.* The court's instruction was not sufficient to remove the harmful effect of the testimony deliberately elicited by the prosecutor. The appellant was deprived of a fair trial. *Bray v. State, supra.*

*Edmiston v. State,* 520 S.W.2d at 387–88.

Here, appellant was accused of attempted capital murder of a complainant, who was a former prosecutor. In the process of presenting a strong case, the prosecutor unnecessarily and intentionally elicited evidence from the complainant revealing that during a prior trial, appellant's defense counsel had threatened the complainant: "Whatever it takes, you'll pay." As in *Summers, supra,* the evidence was elicited for the purpose of inflaming the minds of the jury. Further, the improperly elicited evidence served to implant the suggestion in the minds of the jury, that defense counsel's animosity towards the complainant somehow contributed to encourage, condone, or instigate the alleged violent attack against the complainant. Where *Summers, supra,* and *Bray, supra,* dealt with reversals for attacks upon appellant's counsel with no suggestion of counsel's possible participation in the alleged crime being tried, we are faced here, as in *Edmiston, supra,* with a distinct effort to plant such a suggestion in the minds of the jury. Thus, we have a classic example of the prosecution striking at the appellant over the shoulder of his counsel.

Further, unlike *Edmiston, supra,* the trial judge here erroneously overruled appellant's objection. In so doing, not only did the trial judge deny appellant the benefit of a curing instruction, but unwittingly indicated to the jury his possible agreement with the prosecution, that some possible relevance existed between the threats of appellant's defense counsel and the case on trial before the court.

Citing *Wallace v. State,* 467 S.W.2d 608 (Tex.Crim.App.1971), the dissent would deny relief to the appellant because appellant's counsel addressed the alleged threat in cross-examination of the complainant. However, *Wallace* involved an appellant who voluntarily presented the objected to evidence in pretrial hearings and later on the merits. The case before us is distinguishable in that it was appellant's defense counsel's efforts to minimize the damage to his client, which the dissent erroneously concludes condones the improper actions of the prosecutor.

Likewise, the reliance of the dissent upon *Ex parte Ewing,* 570 S.W.2d 941 (Tex. Crim.App.1978) is misplaced. Where in *Ewing* the objected to evidence was in fact initially elicited by the defense counsel, the defense counsel in this case was merely attempting to minimize the damage to his client upon cross-examination. The objectionable evidence here had previously been improperly elicited by the prosecution over objection.

Faced with the improperly admitted evidence over objection and a trial judge who had denied his objections and curing instruction, defense counsel here had no alternative but to try and cure the damage himself by attempting to show that the results of the prior case left no room for any animosity on his part towards the complainant. Therefore, the case before us is clearly distinguishable from both *Wallace, supra,* and *Ewing, supra,* in that appellant here did not voluntarily testify about the objectionable evidence at any time, and his defense counsel did not initially elicit the damaging evidence.

Further, we take issue with the statement of the dissent that this error could have been cured by instruction because no curing instruction was given through no fault of the appellant, and the Texas Court of Criminal Appeals has clearly announced that such an error cannot be cured by an instruction. *Bray,* 478 S.W.2d at 90. Also, the dissent's suggestion that the prosecution's error should be condoned because it involves a collateral matter ignores that the reversals in *Summers, Bray,* and *Edmiston* also involved collateral matters.

Thus, if the improper suggestion of the prosecution was successfully implanted in the mind of at least one juror, appellant's defense counsel incurred the additional burden of having to defend himself in the process of defending his client. Likewise, appellant was required to defend his counsel in the process of defending himself. This was obviously fundamentally prejudicial to the appellant.

Further, the language of the Texas Court of Criminal Appeals is instructive to the suggestion that the error here is harmless:

> The test to determine whether or not the error is harmless error is not whether a conviction could have been had without the improper argument [evidence], but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction.

*Garrett v. State,* 632 S.W.2d 350, 353–54 (Tex.Crim.App.1982).

It is axiomatic that appellant's counsel's credibility with the jury is critical to the defense of the appellant. It is because an accused is entitled to a reasonable defense in the pursuit of a fair trial, that courts condemn such actions by the prosecution. Where the prosecutor was "free to strike hard blows," he was "not at liberty to strike foul ones, either directly or indirectly." *Dickinson v. State,* 685 S.W.2d 320, 322 (Tex.Crim.App.1984) (En Banc). Under these circumstances, there is a reasonable possibility that the unnecessary attack of the prosecution upon appellant's counsel contributed to the conviction.

We reverse and remand the judgment for a new trial.

BUTTS, Justice, dissenting.

This is an appeal from a conviction for the offense of attempted capital murder. A jury found the appellant guilty and assessed punishment at thirty years' confinement.

In five points of error, the appellant argues that the trial court erred in: (1) permitting the prosecutor to elicit testimony from the complainant attacking defense counsel; (2) permitting hearsay testimony into evidence; (3) admitting a letter into evidence that bolstered the unimpeached testimony of the complainant; (4) admitting a letter previously written by the testifying witness that only served to bolster the witness' credibility before the jury; and (5) allowing a witness to testify beyond his scope as a rebuttal witness.

The facts as set out regarding the point of appeal on which the majority reverses are correct. The exchange between the complaining witness, Mike Sawyer, and the defense counsel is also reflected in the record. Appellant's complaint is based on the examination of the complainant by the State during re-direct examination. Thereafter, on re-cross examination the defense counsel propounded many questions which indicated a previous "testy" relationship between that counsel and Sawyer, who was a prosecutor several years before.

Rule 401 of the Texas Rules of Criminal Evidence defines "relevant evidence" as ev-

idence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. It is also the general rule that the evidence must correspond to the allegations in the charging instrument and be confined to the issues. A collateral question is one which seeks only to test the witness' general credibility, or relates to facts irrelevant to the issues at trial. *Keller v. State*, 662 S.W.2d 362, 365 (Tex.Crim. App.1984). The mere asking of an improper question will not result in reversal unless it results in obvious harm to the defendant. *Williams v. State*, 625 S.W.2d 769, 773 (Tex.App.—Houston [14th Dist.] 1981, pet. ref'd).

Appellant relies on *Edmiston v. State*, 520 S.W.2d 386 (Tex.Crim.App.1975). There the court noted that the prosecutor deliberately asked a question not material to the issues in the case. The testimony, if true, would have shown that the defendant's attorney may have been guilty of the same offense as charged against his client. That was clearly reversible error which deprived the defendant of a fair and impartial trial.

In the present case, however, the collateral matter centered on the past unfriendly relationship between the witness and the attorney for appellant. There is no showing that the questions and answers had anything to do with the *issues* at trial. When defense counsel cross-examined complainant, he simply sought to show his expertise as a defense lawyer, and the animosity between the two lawyers. This was a collateral matter. Additionally, appellant cannot complain of improper testimony which he later voluntarily offers himself and expounds upon. *Wallace v. State*, 467 S.W.2d 608, 609 (Tex.Crim.App.1971). A defendant may not complain of evidence elicited by his own attorney. *Ex parte Ewing*, 570 S.W.2d 941, 948 (Tex.Crim.App. 1978). Moreover, any prejudicial error in this instance could have been cured by an instruction to disregard. Error, if any, in the admission of the collateral facts was waived when appellant on cross-examination asked further specific questions con-

cerning the collateral matter. *See Stephens v. State*, 522 S.W.2d 924, 927 (Tex. Crim.App.1975). The point should be overruled.

Therefore, I respectfully dissent to the disposition of this point and the reversal of the case. Taking into consideration the arguments on all the points urged, I would affirm the judgment.