Opinion filed March 6, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed March 6,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00151-CR 

                                            __________

 

                            PERRY
ANDREW PIPPILLION, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                On Appeal from the 252nd District Court

 

                                                       Jefferson
County, Texas

 

                                                    Trial
Court Cause No. 91244

 



 

                                             M E M O R A
N D U M   O P I N I O N

 

The
jury convicted Perry Andrew Pippillion of the first degree felony offense of
causing serious injury to a child.  Tex.
Penal Code Ann. '
22.04(a)(1) (Vernon Supp. 2007). The jury found that appellant was a repeat
offender and assessed his punishment at confinement for life in the
Institutional Division of the Texas Department of Criminal Justice.  Appellant
challenges his conviction in three issues:  ineffective assistance of counsel,
legally and factually insufficient evidence, and error of the trial court in
denying his requested jury instruction.  We affirm.








Background
Facts

This
case involved a two-month-old baby who starved to death.  Captain Eric Paul
Chapman of the Beaumont Fire Department testified that he responded to a
medical call from 2455 Hemlock in Beaumont on October 24, 2003.  When he
arrived, the baby was not breathing and did not have a pulse.   He tried
unsuccessfully to resuscitate the baby who looked malnourished.  Captain
Chapman could see the baby=s
ribs, Athe baby=s skin was hanging off of
it,@ and A[t]he baby had sunken eyes.@  He determined that there
was no Amechanism of
injury, no phlegm.@ 
In answer to his questions, the mother told him that the baby had not been
eating.

Officer
Jerome D. Watkins, an officer with the Beaumont Police Department for eighteen
years, said that he was dispatched to 2455 Hemlock to assist the E.M.S. with an
infant who was not breathing.  He described the child as being very emaciated,
a skeletal-looking child.  He talked to the mother who gave her name as Tamecca
Henderson.  The prosecutor asked Officer Watkins the following questions:

Q:        Did
you have contact with anyone in the house who identified himself as the father
of the child?

 

A:         Yes,
sir, I did.

 

Q:        Did
he identify himself by the name as Perry Pippillion?

 

A:         Yes,
sir, he did.  

 

Officer Watkins
said that appellant accompanied him to a backroom where he spoke with both
appellant and Tamecca.  Based on the information that they gave, he determined
that the baby was approximately two months old.  Officer Watkins inquired of
the parents if any medical care had been provided to the child up until he
arrived at the house.  The mother said, with appellant present, that Ashe had not had a chance to
take the child back to the doctor since she brought her home from the hospital.@








During
cross-examination, Officer Watkins testified that appellant had lived at 2455
Hemlock for as long as he could remember.  Officer Watkins had dealt with the
Pippillions since he first joined the police department eighteen years ago. 
Officer Watkins did not know how long Tamecca and the baby had lived at 2455
Hemlock, but she introduced herself as the mother and appellant as the father. 
In addition, Tamecca told Officer Watkins that Ashe
resided there.@ 
Despite Officer Watkins=s
earlier testimony that appellant had identified himself as the father, Officer
Watkins on redirect said that he could not say whether appellant stated that he
was the father but that appellant Awas
standing right there when [Tamecca] said he was the father@ and that appellant did not
dispute her statement.  Appellant did not state that he was not the father at
any time.

Beaumont
Police Detective Mark Hogge, a twenty-four-year veteran, testified that, when
he arrived at 2455 Hemlock, the baby had been taken from the house.  He said
that appellant identified himself as the father and identified Tamecca as the
mother.  Appellant also told Detective Hogge that the name of the child was Monique
Pippillion.  Tamecca apparently had left when the baby was taken to the
hospital.  Appellant showed Detective Hogge the bedroom where he and Tamecca
slept as well as where the baby had slept.  Subsequently, Detective Hogge went
to the hospital to see the baby.  Detective Hogge had been working crimes
involving children for seven years and stated that this was Aone of the most horrific
things that [he] had seen.@

The
next witness for the State was Ester Griffin, manager of the Southeast Texas
Community Health Clinic in Beaumont, an indigent care clinic.  At the
prosecutor=s request,
she had searched their records to see if the baby had been a patient there. 
There was no record of the baby as a patient, but the clinic had records for
Azariah Henderson, Ashuntay Green, and Patyria Green as patients.  The clinic=s records reflected that
Tamecca was the mother of these three children.  Earlier, Detective Hogge and
Officer Watkins had stated that other children were living at 2455 Hemlock.

Dr.
Uma Knojia specialized in pediatrics and adolescent medicine and was on duty
when the baby was born at St. Elizabeth Hospital.  He testified that her birth
weight was five pounds, six ounces.  The baby=s
APGAR scores (reflecting the status at birth) were good.  The baby had some
trouble breathing within an hour or two after her birth, but Dr. Knojia said
that situation was not unusual.  The baby stayed at the hospital for five days
and had gained weight by the time she was discharged.  Dr. Knojia would have
expected the baby to gain a minimum of two pounds and a maximum of five pounds
during the next two months; however, the baby=s
weight at autopsy was four pounds ten ounces, way below what Dr. Knojia
expected.  Dr. Knojia pointed out that the autopsy showed no disease and that
it would not have taken a doctor to know something was wrong with the baby.  








Dr.
Knojia further testified that he knew Tamecca was taking the other three
children to Dr. Manuel and that, in his discharge summary, he told Tamecca
that she could also take this baby to Dr. Manuel.  If she could not go to Dr.
Manuel, she could always go to the Southeast Texas Community Health Clinic at
any time.  There was free formula at the clinic, and all this baby needed was
formula.

Dr.
Tommy J. Brown, a forensic pathologist, performed the autopsy.  His first
impression was that it was an unusual and extreme case of malnourishment. 
There was no sign of disease, the baby=s
organs exhibited signs of malnutrition, and there was no evidence of recent
feedings.  Dr. Brown ruled the death as a homicide.  His opinion was that Athe cause of death was
starvation from nutritional, deprivation and neglect.@

The
last witness for the State was Detective Jason Hughes with the Beaumont Police
Department.  He testified that he went to the hospital while Detective Hogge
went to 2455 Hemlock.  At the hospital, Charlotte Pippillion Ainformed [Detective Hughes]
that she was the paternal grandmother.@ 


The
record reflects that appellant had expected to call Tamecca as his first
witness.  Outside the presence of the jury, appellant=s attorney showed the trial court a letter
that he had received from Tamecca=s
attorney.  In the letter, her attorney stated that, because her case was
pending on appeal, he would advise her not to testify in any proceedings other
than her own.  The trial court advised Tamecca of her rights, and she declined
to testify.  The record then indicates that the trial court ruled that it would
allow appellant to offer portions of Tamecca=s
testimony in her trial and the State to offer other portions of that testimony
under the rule of optional completeness.  However, the record does not contain
that testimony.  There is only a statement by the trial court to the jury on
the following morning that Tamecca had exercised her right not to testify and Aso her testimony will not
be presented in this trial.@

Appellant
also introduced a copy of the baby=s
birth certificate.   The birth certificate for the baby identified her name as AMonique Jeanette Pippillion@; thus, Monique had the
same last name as that of appellant.  Tamecca was listed as the mother, but no
father was listed.    

Ineffective
Assistance of Counsel








In
appellant=s first
issue, he contends that he received ineffective assistance of counsel at trial
because counsel failed to file any pretrial motions until the day of trial,
failed to ask sufficient questions of the prospective jurors during voir dire,
and failed to adequately cross-examine the State=s
witnesses.  After a review of the entire record, we find that appellant=s contentions are not
supported by the record.

In
order to determine whether trial counsel rendered ineffective assistance at
trial, we must first determine whether appellant has shown that counsel=s representation fell below
an objective standard of reasonableness and, if so, then determine whether there
is a reasonable probability that the result would have been different but for
counsel=s errors.  Strickland
v. Washington, 466 U.S. 668 (1984); Hernandez v. State, 988 S.W.2d
770 (Tex. Crim. App. 1999); Hernandez v. State, 726 S.W.2d 53, 55 (Tex.
Crim. App. 1986).  In assessing counsel=s
performance, we must make every effort to eliminate the distorting effects of
hindsight, to reconstruct the circumstances, and to evaluate the conduct from
counsel=s perspective
at the time.  We must indulge a strong presumption that counsel=s conduct fell within the
wide range of reasonable professional assistance, and appellant must overcome
the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.  Stafford v. State, 813 S.W.2d 503,
508-09 (Tex. Crim. App. 1991).








Appellant
speculates that his counsel could have made a more thorough investigation if he
had filed the pretrial motions earlier.  Yet, he does not tell us what that
investigation would have revealed.  As an appellate court, we cannot reverse
based on speculation.  An assertion of ineffective assistance of counsel will
be sustained only if the record affirmatively supports such a claim.  Thompson
v. State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999); Ex parte
Ewing, 570 S.W.2d 941, 943 (Tex. Crim. App. 1978); Huynh v. State,
833 S.W.2d 636, 638 (Tex. App.CHouston
[14th Dist.] 1992, no pet.).  The same can be said of appellant=s contentions that his
counsel failed to ask sufficient questions during voir dire and failed to adequately
cross-examine the State=s
witnesses.    The principal contention of appellant at the end of the trial and
on this appeal (in his second and third issues) is that the State did not carry
its burden to show that appellant had a legal duty to act or had assumed care,
custody, or control of the child victim.  See Tex. Penal Code Ann. ' 22.04(b)
(Vernon Supp. 2007).  Thus, it is not surprising that counsel limited his
cross-examination of the State=s
witnesses.  Nor do we know what his own investigation revealed on this
question.  We only know that the record does not reflect that appellant
produced any testimony to counter the State=s
evidence that appellant was the father of the victim and, thus, owed a duty to
provide medical care and food to the victim.  See Tex. Fam. Code Ann. ' 151.001(a)(2), (3) (Vernon Supp.
2007).         In his argument, appellant points out that the indictment did
not name appellant as a parent.  Having failed to object to this alleged defect
in the indictment before the trial on the merits commenced, appellant has not
preserved a complaint for appellate review.  Tex.
R. App. P. 33.1.  It may be, however, that counsel for appellant did not
want to emphasize the duty element before the trial began because the State
would have been put on notice to put on more evidence that appellant was the
victim=s father and
owed a statutory duty to provide food and medical care to the victim.

Under
normal circumstances, the record on direct appeal will not be sufficient to
show that counsel=s
representation was so deficient and so lacking as to overcome the presumption
that counsel=s conduct
was reasonable and professional.  Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002).  That is true in this case.  Appellant=s first issue is overruled.

Legal
and Factual Sufficiency of the Evidence

In
appellant=s second
issue, he contends that the evidence was insufficient to find appellant
guilty.  His specific argument is that there was insufficient evidence to prove
beyond a reasonable doubt that he owed any duty to the child.  We will treat
his argument as encompassing both legal and factual sufficiency.

In
order to determine if the evidence is legally sufficient, we must review all of
the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson
v. State, 17 S.W.3d 664 (Tex. Crim. App. 2000).  To determine if the
evidence is factually sufficient, we must review all of the evidence in a
neutral light.  Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006) (overruling in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim.
App. 2004)); Johnson v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App.
2000); Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  Then, we must
determine whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is
against the great weight and preponderance of the conflicting evidence.  Watson,
204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 10-11. We must also give due
deference to the jury=s
determinations of fact, particularly those determinations concerning the weight
and credibility of the evidence.  Johnson, 23 S.W.3d at 8-9.








Appellant
was charged with injury to a child by failing to provide medical care and
food.  A parent has a duty of care, control, and protection of his or her child
and a duty to provide medical care.  Section 151.001(a)(2), (3).  Section
22.04(a)(1) of the Texas Penal Code provides that a person commits an offense
if, with the requisite mental state, he by omission causes serious bodily
injury to a child.  Omissions constitute an offense if the person has a legal
or statutory duty to act or has assumed care, custody, or control of the
child.  Section 22.04(b). 

Officer
Watkins testified that appellant identified himself as the father of the child
before later qualifying his first answer; however, even then Officer Watkins
stated that appellant was Astanding
right there@ when
Tamecca said that appellant was the father and that appellant never denied that
he was the father.  Tamecca said that she resided at 2455 Hemlock.  Detective
Hogge also testified that appellant identified himself as the father.  At the
hospital, appellant=s
own mother identified herself to Detective Hughes as the paternal grandmother
of the child.  Finally, the child=s
last name on her birth certificate was appellant=s. 
As to the omission, Dr. Brown testified that the cause of the child=s death was starvation,
deprivation, and neglect over the two-month period and ruled the death to be a
homicide.  The evidence was legally and factually sufficient to support
appellant=s conviction. 
As a parent, appellant had a statutory duty to feed and provide medical care to
Monique Pippillion.  Appellant=s
second issue is overruled.    

The
Court=s Charge

In
appellant=s third and
final issue, he contends that the trial court erred in denying his Arequested . . . instruction
that addressed whether [a] legal duty was owed to the child or, in the
alternative, that the [appellant] had a statutory duty to provide care, custody
or control of the child.@

An
appellate court reviews an alleged charge error by determining (1) whether
error existed in the charge and (2) if there was error, whether sufficient harm
resulted from the error to compel reversal.  Posey v. State, 966 S.W.2d
57, 60 (Tex. Crim. App. 1998).  Thus, we must first decide whether error
exists.  








Objections
to the charge must be in writing, but this requirement can be met by dictating
the objection to the court reporter in the presence of the court and the State=s counsel.  Tex. Code Crim. Proc. Ann. art. 36.14
(Vernon 2007).  There is no written instruction in the record, and the recorded
request of appellant at the charge conference only referred to appellant having
assumed care, custody, or control of the child.  Appellant=s counsel acknowledged that
appellant had waived any defect in the indictment and that he did not address
Section 22.04(b)(1), which provides that an omission that causes serious bodily
injury is conduct constituting an offense under Section 22.04(b)(1) Aif the actor has a legal or
statutory duty to act@
(e.g., as a parent).  An objection must distinctly specify the ground upon
which it is based.  Article 36.14.  Appellant=s
objection at the charge conference B
whether appellant had assumed the duty of care B
does not comport with his objection on appeal that the issue of whether
appellant owed a legal duty as a parent should have been made part of the jury
charge.  Rule 33.1(a); Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim.
App. 2002).  Appellant did not preserve the issue he now urges on appeal.  

As
to appellant=s actual
objection during the charge conference B
that he wanted the jury to decide whether appellant Ahad assumed care, custody, or control of
Monique Pippillion@ B the jury charge contained
the following definitions:

OMISSION:

An
omission that causes serious bodily injury to a child is conduct constituting
an offense if the defendant has assumed care, custody, or control of a child.

 

ASSUMED
CARE:

A
person has assumed care, custody and control if he has by acts, words or course
of conduct acted so as to cause a reasonable person to conclude that he has
accepted responsibility for protection, food, shelter and medical care for a
child.

 

 Appellant=s closing argument
concentrated on emphasizing that there was not enough evidence to show that
appellant had assumed care, custody, or control of the child.  Appellant also
argued that the State had not proved the paternity of the child.  The jury
found appellant guilty of the offense of intentionally and knowingly causing serious
bodily injury to a child as alleged in paragraph one of the indictment.  There
was evidence that appellant had assumed care, custody, or control of Monique. 
There was ample evidence for the jury to find that appellant was the father of
Monique and that Tamecca and her children resided with him at 2455 Hemlock.  A
reasonable person could have concluded that appellant had accepted
responsibility for protection, food, shelter, and medical care for Monique. 
The trial court did not err in denying appellant=s
objection at the charge conference.  The charge instruction was adequate under
Section 22.04(b)(2) even though it omitted the language in Section
22.04(b)(1).  Appellant=s
third issue is overruled.








This
Court=s Ruling 


The
judgment of the trial court is affirmed.

 

 

                                    TERRY McCALL

                                    JUSTICE

 

March 6, 2008

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,


McCall, J., and Strange, J.