PD-1087-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/21/2015 2:26:18 PM
Accepted 9/22/2015 1:11:10 PM
ABEL ACOSTA
CLERK

**PD-1087-15**

# IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

### LAJUAN CECILE BAILEY
*Petitioner/Appellant*

**v.**

### THE STATE OF TEXAS
*Respondent/Appellee*

On Petition for Discretionary Review from the Fourteenth Court of Appeals
in Cause No. 01-12-00200-CR, affirming the conviction in
Cause Number 1298261 from the 174th District Court of Harris County

### PETITION FOR DISCRETIONARY REVIEW

**ORAL ARGUMENT NOT REQUESTED**

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**ANGELA CAMERON**
Assistant Public Defender
Harris County, Texas
Texas Bar No. 00788672
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
angela.cameron@pdo.hctx.net

FILED IN
COURT OF CRIMINAL APPEALS

September 22, 2015

ABEL ACOSTA, CLERK

**Counsel for Appellant**

**IDENTITY OF PARTIES AND COUNSEL**

APPELLANT:                                 Ms. Lajuan Bailey
7723 Secretariat
Houston, Texas 77071

PRESIDING JUDGE:                 Hon. Ruben Guerrero
174th District Court
Harris County, Texas
1201 Franklin Avenue, 19th floor
Houston, Texas 77002

TRIAL PROSECUTOR:              Mr. John Brewer
APPELLATE PROSECUTOR:       Mr. Alan Curry
Assistant District Attorneys
Harris County, Texas
1201 Franklin Avenue, 6th floor
Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:     Mr. Jeffrey Sasser
720 Bayland
Houston, Texas 77009

DEFENSE COUNSEL ON APPEAL:    Ms. Angela Cameron
Assistant Public Defender
Harris County, Texas
1201 Franklin Avenue, 13th floor
Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel.......................................................................................ii

Table of Contents...........................................................................................................iii

Index of Authorities........................................................................................................ v

Statement Regarding Oral Argument............................................................................. 1

Statement of the Case .................................................................................................... 1

Statement of Procedural History ................................................................................... 1

Grounds for Review........................................................................................................ 2

Reasons for Review......................................................................................................... 2

Statement of Facts.......................................................................................................... 3

Argument......................................................................................................................... 5

The attorney-client privilege belongs to the client and may not be waived without the client's consent. Appellant expressly waived attorney-client privilege but limited the waiver to one extraneous offense. Trial counsel questioned Appellant's previous counsel regarding privileged communications concerning a second extraneous offense without Appellant's consent.

Did the Court of Appeals err in determining trial counsel's disclosure was not ineffective assistance of counsel, but instead was an "implied waiver?"

Does implied waiver under the "offensive use" doctrine apply to the general defense of reasonable excuse provided for in Tex. Pen. Code §38.10?

Can implied waiver under Tex. R. Evid. 511 trump Appellant's expressed and specific limitation on the waiver of her attorney-client privilege?

Did the Court of Appeals improperly shift the burden to Appellant to prove she did not waiver her attorney-client privilege?

The Court of Appeals' Holding ................................................................. 5

Waiver of Attorney Client Privilege ....................................................... 6

    Sword v. Shield or "offensive use" doctrine ................................... 6

    Tex. R. Evid. 511 ............................................................................. 9

Court of Appeals improperly placed burden on Appellant .................... 10

No reasonable attorney ........................................................................... 11

PRAYER ............................................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................. 12

CERTIFICATE OF COMPLIANCE ......................................................................... 13

APPENDIX ....................................................................................................... 14

# INDEX OF AUTHORITIES

## Cases

*Austin v. State,* 934 S.W.2d 672 (Tex. Crim. App. 1996)................................................................3

*Bailey v. State,* -- S.W.3d -- , No. 01-12-00200-CR, 2015 WL 4497773
  (Tex. App. – Houston [1st Dist.] July 23, 2015, no. pet. h). ............................................*passim*

*Carmona v. State,* 941 S.W.2d 949 (Tex. Crim. App. 1997) ................................... 2, 9, 10

*Carmona v. State,* 947 S.W.2d 661 (Tex. App. – Austin 1997, no pet.) ...........................................9

*Cruz v. State,* 586 S.W.2d 861 (Tex. Crim. App. [Panel Op.] 1979)....................................... 2, 6, 9

*Johnson v. State,* 120 S.W.3d 10 (Tex. App. – Amarillo 2003)
  *aff'd* 169 S.W.3d 223 (Tex. Crim. App. 2005) ..............................................................11

*Marathon Oil Co. v. Moye,* 893 S.W.2d 585 (Tex. App. – Dallas 1994, no writ) ...........................8

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158 (Tex. 1993)..................................................7, 8

*Ryser v. State*, 453 S.W.3d 17, 30 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd) ..................8

## Statutes

Tex. Pen. Code §2.03 .........................................................................................................8

Tex. Pen. Code §38.10 ............................................................................1, 2, 5, 6, 8

## Rules

Tex. R. App. 66.3(b)...........................................................................................2, 8, 10

Tex. R. App. P. 66.3(c) ......................................................................................2, 10, 11

Tex. R. Evid. 511.................................................................................................2, 5, 6, 9

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

## STATEMENT OF THE CASE

Ms. Bailey was charged with bail jumping and failure to appear (C.R. at 2). *See* Tex. Pen. Code §38.10. Bailey entered a plea of "not guilty." (3 R.R. at 6). After a jury trial, Bailey was found guilty and sentenced by a jury to ten (10) years imprisonment in the Texas Department of Corrections – Institutional Division and a fine of $10,000 (C.R. at 58). Timely notice of appeal was filed (C.R. at 62). No Motion for New Trial was filed. Appellant counsel was appointed more than eight months after Bailey was sentenced (Supp. C.R. at 2).

## STATEMENT OF PROCEDURAL HISTORY

On October 7, 2015, in a published opinion, a panel of the First Court of Appeals affirmed Ms. Bailey's conviction. Bailey moved for en banc consideration which the Court granted. On July 23, 2015, in a published opinion the majority of the court affirmed Bailey's conviction. Chief Justice Radack authored a published dissent which was joined by three other justices. *Bailey v. State,* -- S.W.3d.--, No. 01-12-00200-CR, 2015 WL 4497773 (Tex. App. – Houston [1st Dist.], July 23, 2015). After an extension of time, this petition is timely if filed on or before September 23, 2015.

## GROUNDS FOR REVIEW

The attorney-client privilege belongs to the client and may not be waived without the client's consent. Appellant expressly waived attorney-client privilege but limited the waiver to one extraneous offense. Trial counsel questioned Appellant's previous counsel regarding privileged communications concerning a second extraneous offense without Appellant's consent.

Did the Court of Appeals err in determining trial counsel's disclosure was not ineffective assistance of counsel but instead an "implied waiver?"

Does implied waiver under the "offensive use" doctrine apply to the general defense of reasonable excuse provided for in Tex. Pen. Code §38.10?

Can implied waiver under Tex. R. Evid. 511 trump Appellant's expressed and specific limitation on the waiver of her attorney-client privilege?

Did the Court of Appeals improperly shift the burden to Appellant to prove she did not waiver her attorney-client privilege?

## REASON FOR REVIEW

The First Court of Appeals has decided an important question of state law that has not been, but should be settled by the Court of Criminal Appeals. Tex. R. App. P. 66.3(b).

The First Court of Appeals has decided an important question of state law in a way that conflicts with this Court's decision in *Carmona v. State,* 941 S.W.2d 949 (Tex. Crim. App. 1997) and *Cruz v. State,* 586 S.W.2d 861 (Tex. Crim. App. [Panel Op. 1979). Tex. R. App. P. 66.3(c).

2

## STATEMENT OF FACTS RELATIVE TO GROUNDS RAISED

Ms. Bailey was on bond pending trial for fraudulent use or possession of identifying information in both Harris and Jefferson counties and was represented by Brian Roberts on both cases (C.R. at 2) (5 R.R. at 27). Bailey was scheduled to appear in the Harris County court on September 21, 2010 (3 R.R. at 57-58). However on September 8, 2010, the trial court revoked Bailey's bond based on a new charge being filed against Bailey in Brazoria County. *Bailey v. State,* -- S.W.3d -- No. 01-12-00200-CR, 2015 WL 4497773, 1 (Tex. App. — Houston [1st Dist.] July 23, 2015, no. pet. h). Bailey did not appear for the September 21, 2010 court date, which resulted in the indictment in this case being filed (3 R.R. at 58) (C.R. at 2).

At trial, the State called Roberts for the purpose of testifying regarding his communications with Bailey about the September 21, 2010 court date pursuant to the rule pronounced in *Austin v. State,* 934 S.W.2d 672 (Tex. Crim. App. 1996). (3 R.R. at 3-5) (4 R.R. at 31). Roberts testified he talked with Bailey on September 2, 2010 and advised her of the new court date (4 R.R. at 31).

Early in the cross-examination of Roberts, the parties approached regarding Bailey's attorney-client privilege and Roberts' ability to answer trial counsel's questions. (4 R.R. at 39). Trial counsel stated he intended to ask Roberts about communications between Roberts and Bailey regarding warrants "from Brazoria County. Not from Jefferson County, not from Beaumont" (4 R.R. at 39). In an abundance of caution, Bailey was questioned regarding waiving her attorney-client privilege. At that time she

3

specifically stated that she was waiving the privilege as to the Brazoria County case but only that and nothing else, "not anything subsequent or after the fact" (4 R.R. at 40-42).

Despite this expressed limitation, trial counsel questioned Roberts regarding Bailey's Jefferson County case and at one point specifically told Roberts not to "worry about the attorney-client. Everything has been waived at this point." (4 R.R. at 60). A short time later, when the State asked the court to verify from Bailey that trial counsel was correct when he stated she waived her privilege as to Jefferson County (4 R.R. at 88). Ms. Bailey testified she had not waived privilege stating:

> The Defendant: Am I allowed – I do have a problem. I was very specific in saying that I wanted to stick to the Brazoria County charge. I was very, very specific in the very beginning. And I don't know if I can stand up and object to something because I've never gone to trial before, which is why I was very specific about it in the first place. And because I do know, like he argued –

(4 R.R. at 89). The court interrupted Bailey stating it understood and stated the door had been opened to both cases. A discussion between the attorneys continued as to whether Bailey had waived the privilege during which trial counsel responded as follows:

> Mr. Sasser: It's true we were talking during questioning, but in fairness to my client, she did – she did write a note here: We can deal with this without bringing in Jefferson County. Just in response to John's [the prosecutor] comment, she did write that down. I am her attorney and I did say that, but I think Mr. Roberts is right, I don't think I can – I don't think I can waive her privilege. I think she has to do that. By me stating that, I certainly think I overstepped my bounds on that by –

4

(4 R.R. at 91). The discussion between the court and attorneys continued. Ultimately, the trial court ruled Bailey waived her privilege and the court recessed for the day without further testimony. (4 R.R. at 95-96). The next morning trial counsel moved for a mistrial "because of the privileged communications that came in to the jury" (5 R.R. at 4).

## ARGUMENT

The attorney-client privilege belongs to the client and may not be waived without the client's consent. Appellant expressly waived attorney-client privilege but limited the waiver to one extraneous offense. Trial counsel questioned Appellant's previous counsel regarding privileged communications concerning a second extraneous offense without Appellant's consent.

Did the Court of Appeals err in determining trial counsel's disclosure was not ineffective assistance of counsel but instead was an "implied waiver?"

Does implied waiver under the "offensive use" doctrine apply to the general defense of reasonable excuse provided for in Tex. Pen. Code §38.10?

Can implied waiver under Tex. R. Evid. 511 trump Appellant's expressed limitation on the waiver of her attorney-client privilege?

Did the Court of Appeals improperly shift the burden to Appellant to prove she did not waiver her attorney-client privilege?

### *The Court of Appeals' Holding*

The Court of Appeals held trial counsel was not ineffective for questioning Bailey's prior counsel regarding attorney client communications regarding Bailey's pending Jefferson County case because

…by pursuing a strategy and persistently arguing that she had a reasonable excuse for her failure to appear based on her communications with her lawyer, Bailey did place all her communications with Roberts relevant to that particular subject at issue. This understanding of the challenged line of questions is essentially conceded on page 4 of the appellant's brief, which concedes: "As part of her reasonable explanation defense, Bailey consented to waiver of the privilege regarding a charge in Brazoria County." Despite the self-serving limitations stated as part of Bailey's express consent, by asserting the [reasonable excuse] defense she necessarily consented to waiver of all the related and interwoven communications, including those about the importance of appearing in Jefferson County.

*Bailey v. State,* --S.W.3d--, No. 01-12-00200-CR, 2015 WL 4497773, 11 (Tex. App. – Houston [1st Dist.], July 23, 2015).

### Waiver of Attorney Client Privilege

Attorney client privilege "is personal to the client and cannot be waived solely by the attorney." *Cruz v. State*, 586 S.W.2d 861, 865 (Tex. Crim. App. 1979). The majority's holding disregards this fact when it declares Bailey impliedly waived her privilege when both counsel and Bailey testified otherwise. The majority's holding is based on intertwining of the "offensive use" doctrine, often referred to as using the privilege as both a sword and a shield, and Tex. R. Evid. 511.

#### Sword v. Shield or "offensive use" doctrine

Despite Bailey's expressed limitations, the majority found Bailey impliedly waiver the privilege because it believed Bailey used the attorney client privilege offensively when she availed herself of the statutory defense of reasonable excuse found in Tex. Pen. Code 38.10. The majority's opinion characterizes Bailey's defense as being "substantially predicated on her reliance on the counsel she claimed she received from

6

her attorney" and thus relies on the body of case law which finds attorney-client privilege waived when counsel has been attacked. *Bailey* at 10. The dissent correctly points out, however, that prior to the cross-examination of Roberts there is no evidence that Roberts' advice was the basis of Bailey's belief she was excused from appearing on the assigned court date. *Bailey* at 13.

More importantly, however is whether or not the "offensive waiver" doctrine even applies in this case and if so, what is the appropriate test. The majority states "a privilege cannot be used simultaneously as a shield and a sword after a partial disclosure is used as a sword to gain litigation advantage" *Bailey* at 9. The undersigned has not found a case from this Court applying the doctrine to attorney-client privilege or whether or not availing oneself of a statutory general defense constitutes using the privilege as a sword. The majority of cases applying the offensive use doctrine to the attorney-client privilege are civil cases involving discovery disputes. These cases are instructive.

In *Republic Ins. Co. v. Davis*, the Texas Supreme Court fashioned a three prong test to determine in the holder of the privilege in fact utilized the privilege as sword. Before waiver may be found under the doctrine

> First ….the privilege must seek affirmative relief. Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought. Third, disclosure of the confidential communication must be the only means by which the

7

> aggrieved party may obtain the evidence. If any one of these requirements is lacking, the trial court must uphold the privilege.

*Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993) (internal citations omitted).

The reasonable excuse defense to bail jumping is found in Tex. Pen. Code §38.10(c) which begins with the language "[i]t is a defense to prosecution." Tex. Pen. Code §2.03(a) provides defenses so labeled are general defenses. The effect of a general defense being raised merely "fixes the burden of proof on the State to prove every element of the offense, including disproving the justification defense." *Ryser v. State*, 453 S.W.3d 17, 30 (Tex. App. – Houston [1st Dist.] 2014, pet. ref'd). Thus Bailey's use of the reasonable excuse defense does not seek affirmative relief and as such the requirements to find waiver under the offensive use doctrine have not been met. *See Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 590 (Tex. App. – Dallas 1994, no writ) ("[w]hen a defendant relies on privileged information to rebut a plaintiff's cause of action, the defendant is not seeking affirmative relief that is an offensive use of the privilege). Appellant would urge this Court to adopt *Davis'* "affirmative relief" test as opposed to the "gain litigation advantage" language utilized by the majority opinion and find the reasonable excuse defense is not affirmative relief. Because this is an important issue of state law that this Court has not addressed review should be granted. Tex. R. App. 66.3(b).

### *Tex. R. Evid. 511*

Tex. R. Evid. 511 provides that privilege may be waived through the disclosure of any significant part of the privileged matter. Tex. R. Evid. 511(1). However, the rule also requires the disclosure must be voluntary or consented to by the privilege holder. There is no evidence that Bailey voluntarily agreed to trial counsel's disclosure regarding the Jefferson County case. Furthermore, as the dissent points out, the cases holding a defendant acquiesced to the attorney's waiver involve situations where the defendant was silent. That is not the case here. On numerous occasions Bailey specifically limited the extent of her waiver to the Brazoria County case only. As noted by the dissent, Bailey "did everything but stand up in open court and disrupt the court proceedings in an attempt to preserve her attorney-client privilege." *Bailey* at 13.

Despite Bailey's attempts, the majority however found Bailey's consent to disclose information regarding the Brazoria County case "was itself sufficient to waive privilege" Bailey at 10-11. Waiver is not to be "lightly inferred." *Cruz v. State*, 586 S.W.2d 861, 865 (Tex. Crim. App. [Panel Op.] 1979). As acknowledged by the majority "implied waivers are consistently construed narrowly". *Bailey* at 11. Yet the court determined the communications regarding the Jefferson County case were "related and relevant interwoven communications" and part of the "broader context of [Roberts'] representation." The majority reliance on *Carmona v. State,* 947 S.W.2d 661 (Tex. App. – Austin 1997, no pet.) to support its position is misplaced as *Carmona* is distinguishable. In *Carmona*, the question was whether the interview before a polygraph was given was

9

so intertwined as to imply waiver of the pre-test interview when Carmona voluntarily disclosed the polygraph results. *Carmona* involved one transaction – the giving of a polygraph. The pretest interview was given immediately prior to the polygraph and as the dissent points out – both interview and test concerned the same offense. That is not the case here. Bailey was facing two separate offenses – one in Jefferson and one in Harris County.

In essence the court is holding implied waiver trumps express denial. This is akin to saying a woman who consents to a date and kiss impliedly consents to intercourse despite specifically saying no. This cannot be. This flies in the face of this Court's disfavor with inferring waiver and review should be granted to determine this important issue of state law. Tex. R. App. Proc. 66.3(b) & (c).

**Court of Appeals improperly places burden on Appellant**

The Court of Appeals impermissibly shifted the burden of proof to Bailey to show she did not consent to the waiver as opposed to requiring the State to affirmatively prove waiver. In *Carmona v. State*, 941 S.W.2d 949, 953 (Tex. Crim. App. 1997), this Court held "the party seeking to benefit from a finding of waiver has the burden to provide evidence that supports a finding of waiver." Here it is the State seeking a finding of waiver and as such the State has the burden of proof. However, the majority's opinion specifically states the trial court did not abuse its discretion in finding implied waiver because "[t]he record does not provide a firm foundation to affirmatively establish that confidential communications were elicited without Bailey's

actual consent, as the record is conflicted on that subject." *Bailey* at 12. The proper question is whether the State proved waiver, not whether Bailey proved lack of consent. As the majority opinion is in conflict with this Court's opinion in *Carmona,* review should be granted. Tex. R. App. Proc. 66.3(c).

### No reasonable attorney

The Court of Appeals erred in finding implied waiver. Without a finding that Bailey's conduct impliedly waived attorney-client communications regarding Jefferson County, Bailey's attorney-client privilege was violated by trial counsel. Trial counsel admirably confessed his error by stating he got caught up in the heat of battle and overstepped his boundaries. This admission by counsel belies any suggestion that counsel had a strategy to question Roberts' regarding Jefferson County. Nonetheless, even if it was counsel's strategy, the strategy must yield to the client's decision. Just as "the law is clear that trial strategy must take a back seat to the exercise of the defendant's constitutional right to take the stand in his own defense," so too should strategy take a back seat to the client's desire whether to waive privilege. *Johnson v. State*, 120 S.W.3d 10, 18 (Tex. App. Amarillo 2003) *aff'd,* 169 S.W.3d 223 (Tex. Crim. App. 2005). Because there was no implied waiver of privilege and no reasonable attorney would violate attorney-client privilege without the client's consent and counsel's actions resulted in the admission of evidence which destroyed Bailey's only defense, Bailey was denied effective assistance of counsel. The Court of Appeals erred in finding otherwise.

## PRAYER

For these reasons, Ms. Bailey prays this Court to grant discretionary review.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

*/s/ Angela Cameron*
**ANGELA CAMERON**
Assistant Public Defender
1201 Franklin, 13th floor
Houston Texas 77002
(713) 368-0016
TBA No. 00788672
email: angela.cameron@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that I provided a copy of the foregoing petition to the Harris County District Attorney and the State Prosecuting Attorney via e-filing service on the 21st day of September 2015.

*/s/ Angela Cameron*
**ANGELA CAMERON**

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), undersigned counsel certifies that this brief complies with the type-volume limitations of Tex. R. App. Proc. 9.4(e)(i).

1.      This petition for discretionary review contains 3,689 words printed in a proportionally spaced typeface.

2.      This brief is printed in a proportionally spaced, serif typeface using Garamond 14 point font in text and Garamond 12 point font in footnotes produced by Microsoft Word software.

3.      Upon request, undersigned counsel will provide an electronic version of this brief and/or a copy of the word printout to the Court.

4.      Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Tex. R. App. Proc. 9.4(j), may result in the Court's striking this brief and imposing sanctions against the person who signed it.

/s/ Angela Cameron
**ANGELA L. CAMERON**

2015 WL 4497773
Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN
RELEASED FOR PUBLICATION IN THE
PERMANENT LAW REPORTS. UNTIL RELEASED,
IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Texas,
Houston (1st Dist.).

Lajuan Cecile Bailey, Appellant
v.
The State of Texas, Appellee

NO. 01–12–00200–CR   |   Opinion on
en banc reconsideration issued July 23, 2015

**Synopsis**
**Background:** Defendant was convicted in a jury trial in the 174th District Court, Harris County, Ruben Guerrero, J., of failure to appear as required for a pretrial hearing. Defendant appealed.

**Holdings:** On motion for en banc reconsideration, the Court of Appeals, Michael Massengale, J., held that:

[1] defendant's reasonable excuse defense based on her former defense counsel's alleged failure to advise her of pretrial hearing served to waive the attorney-client privilege as to communications relating to the representation as a whole, and

[2] former defense counsel's testimony divulging otherwise privileged communication did not necessitate declaration of mistrial given defendant's waiver.

Affirmed.

Radack, J., issued dissenting opinion in which Jennings, Keyes, and Higley, JJ., joined.

West Headnotes (23)

**[1]      Criminal Law**

**Right of Defendant to Counsel**

The constitutional right to counsel in a criminal prosecution exists to protect the fundamental right to a fair trial. U.S. Const.Amend. 6.

Cases that cite this headnote

**[2]      Criminal Law**

**Requisites of fair trial**

In context of a criminal trial, a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding. U.S. Const. Amend. 6.

Cases that cite this headnote

**[3]      Criminal Law**

**Prejudice in general**

The benchmark for judging any claim of ineffective assistance must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. U.S. Const.Amend. 6.

Cases that cite this headnote

**[4]      Criminal Law**

**Standard of Effective Assistance in General**

The right to effective counsel does not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight. U.S. Const.Amend. 6.

Cases that cite this headnote

**[5]      Criminal Law**

**Determination**

An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. U.S. Const.Amend. 6.

Cases that cite this headnote

**[6]      Criminal Law**

**Deficient representation in general**

The adequacy of attorney performance, for purposes of reviewing a claim alleging ineffective assistance, is judged against what is reasonable considering prevailing professional norms. U.S. Const.Amend. 6.

Cases that cite this headnote

**[7]**   **Criminal Law**
**Presumptions and burden of proof in general**
**Criminal Law**
**Strategy and tactics in general**

There is a strong presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy, for purposes of reviewing a claim alleging ineffective assistance. U.S. Const. Amend. 6.

Cases that cite this headnote

**[8]**   **Criminal Law**
**Presumptions and burden of proof in general**

In order to rebut presumption of effective assistance, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide constitutionally adequate representation. U.S. Const. Amend. 6.

Cases that cite this headnote

**[9]**   **Criminal Law**
**Conduct of Trial in General**

Limitations of the record often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel. U.S. Const. Amend. 6.

Cases that cite this headnote

**[10]**   **Criminal Law**
**Conduct of Trial in General**

An ineffective assistance claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim. U.S. Const. Amend. 6.

Cases that cite this headnote

**[11]**   **Privileged Communications and Confidentiality**
**Waiver of privilege**
**Privileged Communications and Confidentiality**
**Presumptions and burden of proof**

The mere disclosure of privileged materials by a defendant's lawyer, by itself, does not give rise to a presumption of waiver of the attorney-client privilege; nevertheless, the totality of the circumstances and reasonable inferences therefrom may support a finding of waiver. U.S. Const. Amend. 6.

Cases that cite this headnote

**[12]**   **Privileged Communications and Confidentiality**
**Waiver of privilege**

Consistent with privilege rule's acknowledgement that consent to disclosure of any significant part of a privileged matter may constitute waiver of the whole, a privilege may not be waived selectively to disclose only such evidence as may be beneficial to the party holding the privilege. Tex. R. Evid. 511.

Cases that cite this headnote

**[13]**   **Privileged Communications and Confidentiality**
**Offensive use doctrine**

A privilege cannot be used simultaneously as a shield and a sword; after a partial disclosure is used as a sword to gain litigation advantage, the privilege cannot then be used to shield the remainder of the privileged communication. Tex. R. Evid. 511.

Cases that cite this headnote

**[14]**   **Privileged Communications and Confidentiality**

 Waiver of privilege

With specific reference to the attorney-client communication privilege, it may be implicitly waived by raising issues regarding the performance of counsel, particularly if an issue is injected into the case which requires the attorney's testimony. Tex. R. Evid. 511.

Cases that cite this headnote

**[15] Privileged Communications and Confidentiality**
Waiver of privilege

The scope of an implied waiver of the attorney-client privilege is a legal question to be determined under the rules of evidence, and thus it is not necessarily defined by the client's own articulation of the scope of privilege she intends to waive while at the same time authorizing disclosure of privileged communications considered helpful to her. Tex. R. Evid. 511.

Cases that cite this headnote

**[16] Privileged Communications and Confidentiality**
Waiver of privilege

In the course of presenting the statutory defense of reasonable excuse for her failure to appear at a pretrial hearing in criminal proceedings, defendant expressly waived the attorney-client privilege as to a significant part of her communications with her former defense counsel, the legal effect of which could not be limited selectively to only those communications that were helpful to the defense and instead extended to all other related attorney communications which were relevant to the defense and thereby, in fairness, became admissible when defendant injected those communications into the case; defendant's apparent desire to exclude evidence about communications relating to one case constituted an assertion of the privilege as a shield against the use of what turned out to be prejudicial information divulged as part of the broader context of the representation, which was that

former counsel actually had documented his significant efforts to inform and advise defendant about the consequences of a failure to appear. Tex. R. Evid. 511(1).

Cases that cite this headnote

**[17] Privileged Communications and Confidentiality**
Waiver of privilege

Implied waivers of privileges are consistently construed narrowly.

Cases that cite this headnote

**[18] Privileged Communications and Confidentiality**
Waiver of privilege

Courts must impose a waiver of a privilege no broader than needed to ensure the fairness of the proceedings before it.

Cases that cite this headnote

**[19] Privileged Communications and Confidentiality**
Waiver of privilege

A broad waiver of privilege rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.

Cases that cite this headnote

**[20] Criminal Law**
Privilege

Like other evidentiary rulings, a trial court's ruling determining that a privilege has been waived is reviewed for abuse of discretion, is upheld when it is within the zone of reasonable disagreement, and may not be reversed solely because the appellate court disagrees with the decision.

Cases that cite this headnote

**[21] Criminal Law**

 Determination

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. U.S. Const. Amend. 6.

Cases that cite this headnote

**[22] Criminal Law**

 Counsel

Former defense counsel's disclosure of privileged information did not necessitate declaration of mistrial, in prosecution for failure to appear as required for a pretrial hearing, as the privilege already had been waived before the line of questions that gave rise to defendant's motion for mistrial, and the testimony of which defendant complained was introduced by her own attorney.

Cases that cite this headnote

**[23] Criminal Law**

Admission of evidence

A defendant may not complain of evidence elicited by her own attorney.

Cases that cite this headnote

**On Appeal from the 174th District Court, Harris County, Texas, Trial Court Case No. 1298261; Ruben Guerrero, Judge**

**Attorneys and Law Firms**

Angela L. Cameron, Assistant Public Defender, Houston, TX, for Appellant.

Devon Anderson, District Attorney, Alan Curry, Donald W. Rogers, Jr., Assistant District Attorney, Houston, TX, for Appellee.

Panel consisted of Chief Justice Radack and Justices Massengale and Huddle.

**OPINION ON EN BANC RECONSIDERATION** *

* We grant appellant's motion for en banc reconsideration, withdraw our opinion of October 7, 2014, vacate our judgment of the same date, and issue this en banc opinion and judgment in their stead. *See* TEX.R.APP. P. 49.7.

Michael Massengale, Justice

**\*1** A jury convicted appellant Lajuan Cecile Bailey of failure to appear as required for a pretrial hearing. *See* TEX. PENAL CODE ANN. § 38.10. It assessed punishment at 10 years' confinement and a $10,000 fine. *See id.* § 12.34.

It was undisputed that Bailey failed to appear as required for a pretrial hearing, and her trial strategy was to invoke the statutory defense available when "the actor had a reasonable excuse" for her failure to appear in accordance with the terms of her release. *See id.* § 38.10(c). She affirmatively introduced evidence of communications with her lawyer in an attempt to establish her excuse that the lawyer failed to tell her that she had to appear—indeed, there was no conceivable other purpose for cross-examining her attorney. That was a plausible trial strategy, which entailed an implied waiver of the attorney-client privilege because it placed in issue all of her communications with her lawyer about the need to actually appear for hearings as required by the court.

Bailey now contends that she received ineffective assistance of counsel at trial. In the face of a disputed factual record and without the benefit of a post-trial evidentiary hearing, she claims that her trial counsel divulged privileged communications without authorization. To establish such a claim on direct appeal, an affirmative demonstration of deficient attorney performance and resulting harm must be firmly founded in the record. Although Bailey contends that she did not consent to the waiver of privilege in connection with her trial counsel's cross-examination of her former lawyer, the trial judge expressly found that such a waiver in fact had occurred. That evidentiary ruling is supported by the record.

We hold that the trial court did not abuse its discretion to conclude that in the course of presenting the statutory defense of reasonable excuse, Bailey expressly waived privilege as to a significant part of her communications with her attorney, and the legal effect of the waiver could not be limited

selectively to only those communications that were helpful to the defense. As a matter of law, the waiver also extended to all other related attorney communications which were relevant to the defense and thereby, in fairness, became admissible when Bailey injected those communications into the case. Because Bailey does not argue and the record does not reveal any other plausible strategy to defend the charge of failure to appear, there also has been no demonstration of harm.

Bailey also contends that the trial court erred in overruling her motion for mistrial based on the disclosure of her attorney-client communications. The trial court acted within its discretion to deny the mistrial because the testimony of which Bailey complains was introduced by her own attorney.

We affirm the judgment.

## Background

Our review of an ineffective-assistance claim on direct appeal requires evaluation of allegedly deficient performance in context of the totality of the representation and in light of the entire record.[1] To the extent this appeal implicates the trial court's evidentiary determination that a privilege was waived, we owe "almost total deference" to an implied finding of any facts that would support the ruling and would be supported by the record, especially when such findings are based on an evaluation of credibility and demeanor.[2]

[1] *See, e.g., Okonkwo v. State,* 398 S.W.3d 689, 693 (Tex.Crim.App.2013) (appellate review focuses on the objective reasonableness of counsel's actual conduct "in light of the entire record"); *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999) ("An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel.").

[2] *See, e.g., Johnson v. State,* 414 S.W.3d 184, 192 (Tex.Crim.App.2013); *Cameron v. State,* 241 S.W.3d 15, 19 (Tex.Crim.App.2007) (reviewing trial court's decision on the applicability of privilege as an evidentiary ruling).

**\*2** Lajuan Bailey was charged in 2009 with the felony offense of fraudulent use or possession of identifying information in Harris County.[3] She was charged with a separate instance of the same crime that same year in Jefferson County. In both cases, she was released from custody on bond pending trial.

[3] *See* Act of May 22, 2007, 80th Leg., R.S., eh. 631, § 1, sec. 32.51, 2007 Tex. Gen. Laws 1204; Act of May 26, 2007, 80th Leg., R.S., eh. 1163, § 1, sec. 32.51, 2007 Tex. Gen. Laws 3991, 3992; Act of May 25, 2007, 80th Leg., R.S., ch. 1173, §§ 1–3, sec. 32.51, 2007 Tex. Gen. Laws 4012 (current version at TEX. PENAL CODE § 32.51).

### A. Circumstances of failure to appear

Bailey hired attorney Brian Roberts to defend her in both cases. A pretrial conference was scheduled to be held in Harris County on September 7, 2010. Fearing that the hearing would preclude him from attending a friend's funeral, Roberts arranged to have the conference reset. On September 2, he informed Bailey that the hearing had been rescheduled to September 21.

On September 8, Bailey's bond was revoked in Harris County because a new charge had been filed against her in Brazoria County. A warrant had issued for Bailey's arrest on that charge, felon in possession of a firearm. *See* TEX. PENAL CODE § 46.04(a).

Bailey was scheduled to appear for a separate hearing in Jefferson County on September 15, 2010. She did not appear. Her Jefferson County bond was forfeited, a capias was issued, and Roberts withdrew from representing her in that case. On September 21, she did not attend the rescheduled pretrial conference in Harris County. As a consequence, Roberts withdrew from representing her in the Harris County case as well, and the State charged Bailey with the offense of failure to appear.

### B. Voir dire

While selecting the jury, defense counsel Jeffrey Sasser previewed Bailey's strategy of presenting a reasonable excuse for her failure to appear. Sasser stated: "The law for bail jumping does allow a defense if someone had a reason, a legitimate reason for not showing up." He then asked the venire panel whether there was "any reason" they could imagine "someone might not show up for court," eliciting responses that included "hospital," "family emergency," and "incarcerated." Sasser then asked: "What about if they didn't know, would that be a legitimate reason?" One venireperson responded "No," prompting Sasser to retort: "If they didn't know they were supposed to come to court?" The transcript indicates the panel responded "in unison": "No." This line

of discussion then ended after the trial judge sustained an objection from the State.

### C. State's motion to compel

At the beginning of trial testimony, the court held a hearing on the State's motion to compel the testimony of Bailey's original defense attorney, Brian Roberts, as a witness to testify "about information regarding resets and information passed on by the defense attorney from the Court to his client for purposes of showing up in court." Roberts was present and asserted his unwillingness to divulge information relating to a former client unless ordered to do so by the court. The State argued that Roberts could be compelled to testify about his communication of court dates to Bailey, as the transmission of this information is exempt from the attorney-client communication privilege under the rule of *Austin v. State,* 934 S.W.2d 672 (Tex.Crim.App.1996). The trial court agreed, granted the State's motion to compel, and ordered Roberts to testify.

### D. Evidence of Bailey's failure to appear

**\*3** The State called as witnesses Bailey's bail bondsman and several Harris County court employees, including the district court coordinator. The State relied on these witnesses to establish the basic facts supporting its case: Bailey was charged with a crime, she had been released on bond with the expectation that she appear in court when required, she was obligated to appear in court on September 21, and she did not appear. The bail bondsman testified that he had spoken to Bailey on September 8, and that she told him "that there was a reset, an off-docket reset." The bondsman also made several subsequent attempts to communicate with Bailey between September 8 and the next court date on September 21, but these were unsuccessful because she had moved and changed her phone number. [4]

[4] The dissent makes special note of the bondsman Stim Bowie's testimony, characterizing it as demonstrating that he believed, as Bailey claimed to believe, that "the September 8 revocation of her bond excused her from the obligation to appear on September 21." This mischaracterizes the testimony, in which Bowie agreed only with defense counsel's suggestion that after the bond had been revoked, no other action was required of Bailey "in that contract." Bowie's agreement that Bailey owed no further performance with respect to her contract to obtain a bail bond is not tantamount to agreement that

Bailey also was excused from her obligation to the court to appear when required.

### E. Evidence of Bailey's knowledge of the Harris County court date

On the second day of testimony, the State called Roberts to the stand, indicating that it intended to ask him about his representation of Bailey in the Jefferson County case. Defense attorney Sasser objected, arguing that any mention of Jefferson County and Bailey's failure to appear for trial in that case would be "highly prejudicial" and inadmissible under Rule 403. [5] The State argued that the evidence was admissible under Rule 404(b) in order to show motive or intent. The court ruled that the Jefferson County case should not be discussed unless the defense "opened the door."

[5] Bailey does not claim on appeal that the injection of extraneous offense evidence constituted deficient performance by her trial counsel. Accordingly, the dissent's repeated references to the disclosure of an extraneous offense miss the mark—they have nothing to do with Bailey's contention on appeal that her privilege was violated.

Accordingly, throughout direct examination the State confined its questioning to the history of the Harris County matter. Roberts testified about a series of resets in the Harris County case. He explained that he requested the final reset because a close friend had died and there was a risk the funeral would coincide with the hearing. He sent a lawyer with whom he shared office space, Chip Lewis, to obtain the reset. He further confirmed that he had telephoned Bailey on September 2 and told her about the reset.

### F. Cross-examination of former attorney

During cross-examination, Sasser initially asked questions critical of Roberts's handling of the reset. For example, he asked Roberts why he had sent another attorney to handle it and why he failed to consult with Bailey prior to rescheduling. Eventually, Sasser changed subjects to the Brazoria County charge. That subject had not been part of the State's direct examination, and the new line of defense questioning prompted a renewed discussion of the attorney-client privilege:

> Sasser: Do you remember having—I know this is real touchy because of the attorney-client privilege. For purposes of my questioning, if I ask you a question that invades attorney-client privilege, you can assume it's

okay to answer. *I've talked to my client about this.* Okay? I want to go into specific conversations. I want to have my client—

**\*4** Prosecutor: Judge, may we approach.

(Emphasis supplied.) At the bench, the prosecutor then stated: "I think for Mr. Roberts's protection, he's worried about going into this and he needs to hear that from the client outside the presence of the jury so that Mr. Roberts is comfortable that she is allowing him to answer the questions." The judge then excused the jury from the courtroom, and the discussion continued in Bailey's presence:

Sasser: Judge, at this time I anticipate asking Mr. Roberts about communications that he had with my client regarding the warrants that came up from Brazoria County. Not from Jefferson County, not from Beaumont. We already talked about this earlier, but the fact, you know, [the prosecutor] had come in here and gotten the bond revoked, she had these new cases in Brazoria County, I basically want to talk about the conversations he might have had with her about that and the fact—

The Court: *You discussed these with your client?*

Sasser: *Yes, sir, I have.*

The Court: Alright. I will allow you to.

Sasser: For my protection, may I get something on the record from my client?

The Court: Any objection?

Prosecutor: No, Judge. I think for Mr. Roberts, he needs to hear it out of Ms. Bailey's mouth that she's waiving the privilege between her and the attorney.

Sasser: You just heard what I discussed with the judge.

Defendant: *Only on one case. That's the only case that was because I had no other charges. There was only one case filed.*

Sasser: Are you waiving the attorney-client privilege by your prior attorney, Mr. Roberts, for me to question him regarding communications that you may have had with him around September 2nd, 2010 regarding your outstanding cases, the Brazoria cases?

Defendant: *Yes, one case.*

The Court: All right. Anything further?

Prosecutor: Not unless Mr. Roberts has questions of his prior client or has concerns.

Sasser: I think it's clear she waived the privilege at this point. I'm offering Mr. Roberts the opportunity if he doesn't feel uncomfortable (sic) or doesn't need to make inquiries so we don't have to take the jury back out.

Mr. Roberts, do you think that's adequate for the attorney-client privilege for you to answer the questions unencumbered by attorney-client privilege you used to have with Ms. Bailey?

Roberts: I didn't quite hear what it is she's waiving. I don't feel comfortable testifying to anything unless I hear directly from her the particular privileged conversations that she's waiving her privilege to. Are you waiving privilege—

Defendant: I'm only waiving privilege to the one case that was filed against me in Brazoria County during this time because everything did not happen at the same time. Do you understand what I'm saying?

Roberts: Correct.

Defendant: There's only one thing that changed during the whole time I was on bond, that is the only thing that I'm talking about and referencing, not everything subsequent or after the fact.

Sasser: She had a gun case, the initial case filed in Brazoria County, felony possession of a gun. That was the warrant [the prosecutor] came in and showed you. I would assume. I wasn't here, Judge. She picked up this new case in Brazoria and you revoked her bond.

**\*5** Roberts: That's the only thing. Nothing else. I understand.

Defendant: Just only that.

(Emphasis supplied.)

In response to questioning by the defense, Roberts confirmed that during the time leading up to the September 21, 2010 Harris County court date, Bailey had an "open warrant" stemming from the Brazoria County charge. Sasser probed the extent to which Roberts informed Bailey of the seriousness of the warrant and the need to present herself

to authorities. He elicited testimony confirming that Roberts prepared the motion to withdraw in advance of the hearing because he knew that Bailey would not be coming to court, and explaining how he knew that. [6] As Sasser continued to probe the attorney-witness's communications with his former client, he reassured him: "We'll get through this. It's all out right now. The jury is going to hear about everything. Don't worry about the attorney-client. *Everything has been waived at this point.*" (Emphasis supplied.)

[6]   Under the pressures of a cross-examination that placed his professionalism at issue, Roberts displayed an admirable sensitivity to respecting his former client's privilege. When the questioning about his client communications first veered away from the Brazoria County charges, it was Roberts who provoked a careful consideration of how the cross-examination was unfolding. When asked how he knew that Bailey would not be coming to court for a hearing in Harris County (such that it was recited in the written motion he had brought with him to court on the date of the hearing as a reason supporting his request to withdraw), Roberts suggested that counsel "might want to approach" the bench. The ensuing bench conference yielded no clarity with respect to the privilege, and Bailey's trial counsel asked the question again, specifically instructing the witness: "You can answer that." Roberts sought guidance from the trial judge, who stated: "You may."

The exchange between defense attorney and former-attorney witness apparently became heated when Sasser asked questions suggesting that Roberts, along with his office mate Lewis, had been demanding higher fees of Bailey in the wake of the Brazoria County charges. Roberts denied attempting to charge Bailey more for the cases he had been retained to handle in Jefferson and Harris Counties, and he also explained that his office mate, Lewis, did offer to defend her against the fresh charges in Brazoria County for an additional fee.

Sasser eventually asked Roberts whether he warned Bailey that she would be "making a huge mistake" by not appearing and forsaking the opportunity for plea bargains he had been negotiating. Roberts replied that on September 14 he had emailed, texted, and called Bailey to advise her of what would happen if she did not appear for court in Jefferson County. In response to Sasser's questions, Roberts revealed that he had expressly warned Bailey by email that her failure to appear in Jefferson County would likely result in a felony "bond jumping charge" and also "necessarily complicates your Harris County case."

 **\*6**  When another discussion of the privilege ensued, the trial court stated its understanding that "we have opened the door, we have come into both the Jefferson County charges and the Brazoria County charges, along with the charge here." When Bailey interjected that she "was very specific in saying that I wanted to stick to the Brazoria County charge," the trial judge reiterated that "the door has been opened as to both charges" and that the privilege had been waived.

When trial resumed the next day, the parties continued to debate the privilege issue in the context of defense motions for mistrial and, in the alternative, to strike the testimony relating to the Jefferson County charges. Among other responses, the State argued that Bailey's privilege had been waived for several reasons:

> Number one, they were accusing Mr. Roberts of something, therefore, the privilege disappears so he can defend himself. Number two, it was brought up by the defense as a contemplated part of their [reasonable-mistake] defense. Number three, the defendant did not assert her privilege after hearing her lawyer say: The privilege is waived, go ahead and answer the question. And she very easily could have done that over the long period of time at some point, Judge. [7]

The trial court denied the motion for mistrial and the motion to strike.

[7]   The dissent suggests that the State never argued implied waiver. But as quoted above, the trial court initially excluded testimony about the Jefferson County charge unless the defense "opened the door," and the State did argue at trial, in support of the trial court's later waiver finding, that "it was brought up by the defense as a contemplated part of their defense." This response did express, in general terms, the substance of the implied-waiver argument. Moreover, we "may uphold a trial court's ruling on any legal theory or basis applicable to the case." *Martinez v. State,* 91 S.W.3d 331, 336 (Tex.Crim.App.2002); *see also Winegarner v. State,* 235 S.W.3d 787, 790 (Tex.Crim.App.2007) ("as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld").

Sasser then continued his cross-examination of Roberts. He immediately and affirmatively elicited testimony that although Roberts had called, texted, and emailed Bailey the day before her scheduled appearance admonishing her to appear in Jefferson County, he did not repeat these communications in regard to Harris County. In phrasing his questions, Sasser emphasized that Bailey's bond had been revoked in Harris County prior to her scheduled appearance on September 21, whereas in Jefferson County, Bailey's bond had not been revoked prior to her failure to appear there on September 15.

Later, during recross-examination, Sasser returned to the substance of the communications about the Jefferson County case, and he asked Roberts to confirm that Bailey understood that if she had appeared at the hearing in Beaumont, she would have been taken into custody.

### G. Bailey's testimony

Once the State rested, the defense called Bailey to the stand. She emphasized that she had not wanted to be taken into custody on the Brazoria County warrants because she wanted the opportunity "to take care of everything" and have her "fair day in court." She also discussed meetings in which Roberts's office mate, Lewis, offered to defend her on the Brazoria County charge for $30,000. According to Bailey, in addition to allowing Roberts to attend a funeral, the rescheduling of the Harris County hearing also served the purpose of giving her "more time out there in the free world to get money together to give attorneys."

**\*7** After reviewing the substance of these discussions with attorneys Roberts and Lewis, defense counsel asked Bailey about her understanding of her general status at that time with respect to her various pending criminal proceedings. Bailey's response specifically addressed the outstanding warrants for her arrest:

Q. (By Mr. Sasser) Okay. So, after you left your meeting, that last meeting, the one that was right before the off-docket reset was done, did you feel like if you got this money together that you would be able to stay out of custody and fight your cases like you had been out before?

A. Yes, I did.

Q. And why?

A. Because ... once retained and everything, the plan was to do a non-arrest bond in Brazoria County. That would have alleviated any warrants, I wouldn't have had warrants in any counties, and I would have had a good reputable person from Brazoria County to help me fight the charge that was brought against me.

Defense counsel also asked Bailey to explain her failure to appear in Jefferson County:

Q. Why did you not go to Beaumont when you were supposed to go? You said you had multiple reasons. You were talking about your first reason.

A. Okay. The first reason I had is because of my bond being revoked in Harris County. I wasn't prepared for that. The second reason was because when speaking with my attorney at that time, when he—when Mr. Roberts said he sent me the e-mail, I didn't even get the e-mail. I was under the impression that our plan was to handle all of my cases at one time, and, you know, I guess to have a plan for everything.

She thus testified that she did not appear in Jefferson County because she "wasn't prepared" for her bond revocation in Harris County, and she was under the "impression" that the "plan" arranged with her attorney was to consolidate and resolve all of the pending charges. When Bailey was asked why she did not appear in Harris County on September 21, she answered, "Because according to the agreement I had on the bail agreement, my bond was revoked." Bailey went on to explain that she had a background in real estate and was familiar with contracts.

Rather than relying on Bailey's own lay understanding of the implications of the revocation of bail to establish the reasonableness of her excuse, defense counsel then sought to bolster the reasonableness of Bailey's understanding of her contract with the bonding company:

Q. (By Mr. Sasser) Well, what did you do when you found out it was revoked? Did you try to get an understanding of this agreement?

A. Yes, I did.

Q. Who did you try to get that understanding from?

A. From my attorney, Mr. Roberts, and from the bonding company.

**H. Defense closing argument and judgment of conviction**

The jury charge contained an instruction on the defense of reasonable excuse that specifically addressed Bailey's claim that she had believed the revocation of her Harris County bond on September 8 relieved her of the obligation to attend court on September 21. *See* TEX. PENAL CODE § 38.10(c). In his closing argument, Sasser admitted that Bailey had failed to appear but argued that the jury should acquit her because she had a reasonable excuse. He contrasted Bailey's situation in Jefferson County, where her bond had not been revoked, and her circumstances in Harris County, where bond had been revoked prior to her scheduled appearance.

 **\*8** Sasser noted that Roberts had specifically warned Bailey to appear in Jefferson County, but he had not warned her about Harris County. He emphasized that in response to the charges pending against her in three different counties, Bailey did "the one thing she knows to do, call her attorney, says: Hey what do we do?" The thrust of this argument was that she reasonably placed her trust in Roberts to manage the situation, and that his failing rather than hers resulted in her failure to appear. Sasser argued:

> We know he didn't send her anything else to say: Hey, look you need to come to Houston. You need to come to this court as well or else this could happen. We know that because he said he did not e-mail her anything.
>
> ....
>
> The defendant testified and said she had conversations with Mr. Roberts. And, basically, it was, you know, if you can get this money together, we can try to take care of your problems. And that's what she was trying to do.
>
> ....
>
> ... She was trying to get a solution. She was counting on her attorneys at the time to help her out of—a helpless situation, really, at the time; but in her mind, she was thinking, maybe I can still stay out. I mean, as a defendant that's what you think. I don't want to be in jail. And she's thinking, if I can get this money together *like my attorneys told me,* they can take care of all this stuff. By the way, my bondsmen already told me my bond is revoked in the court. *My attorneys already told me my bond is revoked in the court. There's no consequence.* If I don't go to court, I'm just going to get my affairs in order, try to get money together, get all cases consolidated, taken care of.

(Emphasis supplied.) Sasser thus argued that Bailey's course of conduct had been sanctioned by the attorneys she had retained to manage her legal problems, emphasizing her desire to remain free from custody so that she could gather money to hire Lewis as her attorney in Brazoria County and consummate her plans with Roberts to resolve the Jefferson County and Harris County charges together.

The jury found Bailey guilty, and after a hearing on punishment, imposed a fine of $10,000 and a prison sentence of ten years. The judge entered judgment on the jury's verdict. Bailey filed a notice of appeal and Sasser moved to withdraw.

## Analysis

Bailey argues that she received ineffective assistance of counsel and that the trial court erred by denying her motion for mistrial.

### I. Ineffective assistance of counsel

Bailey argues that she received ineffective assistance of counsel, but only based upon a portion of Sasser's cross-examination which elicited testimony about attorney-client communications. The only examination alleged to be deficient was that which came before the trial judge ruled "the door has been opened" to questioning about Jefferson County. Bailey does not complain on appeal that Sasser rendered ineffective assistance by failing to explain the legal implications of her express waiver of privilege, by opening the door to evidence about the Jefferson County extraneous offense, by continuing his examination on that subject after the denial of a mistrial, or by arguing to the jury that she had a reasonable excuse based on her communications with her lawyer.

 **[1]** **[2]** **[3]** **[4]** **[5]** The constitutional right to counsel in a criminal prosecution exists to protect the fundamental right to a fair trial. *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984). In this context, "a fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id.* at 685, 104 S.Ct. at 2063. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. "This right does

not mean errorless or perfect counsel whose competency of representation is to be judged by hindsight." *Robertson v. State,* 187 S.W.3d 475, 483 (Tex.Crim.App.2006). Claims that a defendant received ineffective assistance of counsel are governed by a two-part test: (1) whether the attorney's performance was deficient, i.e., did counsel make errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and if so, (2) whether that deficient performance prejudiced the party's defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. "An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999); *see also Okonkwo v. State,* 398 S.W.3d 689, 693 (Tex.Crim.App.2013) (appellate review focuses on the objective reasonableness of counsel's actual conduct "in light of the entire record").

 **\*9** **[6]** **[7]** **[8]** **[9]** **[10]** The adequacy of attorney performance is judged against what is reasonable considering prevailing professional norms. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. There is a strong presumption that, considering the circumstances, a lawyer's choices were reasonably professional and motivated by sound trial strategy. *Id.* at 689, 104 S.Ct. at 2065; *Nava v. State,* 415 S.W.3d 289, 307–08 (Tex.Crim.App.2013). In the face of this presumption, a criminal defendant has the burden of showing by a preponderance of the evidence that his attorney failed to provide constitutionally adequate representation. *Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002). Limitations of the record often render a direct appeal inadequate to raise a claim of ineffective assistance of counsel. *See Goodspeed v. State,* 187 S.W.3d 390, 392 (Tex.Crim.App.2005). "An ineffective-assistance claim must be firmly founded in the record and the record must affirmatively demonstrate the meritorious nature of the claim." *Menefield v. State,* 363 S.W.3d 591, 592 (Tex.Crim.App.2012); *see also Thompson,* 9 S.W.3d at 813. That necessary firm foundation is lacking in this direct appeal. As such, this is not the "rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava,* 415 S.W.3d at 308.

 **[11]** As applicable to this case, Rule 511(1) of the Rules of Evidence provided: "A person upon whom these rules confer a privilege against disclosure waives the privilege if ... the person ... voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged." TEX.R. EVID. 511(1).[8] The mere disclosure of privileged materials by

a defendant's lawyer, by itself, does not give rise to a presumption of waiver. *Carmona v. State,* 941 S.W.2d 949, 953 (Tex.Crim.App.1997). Nevertheless, "the totality of the circumstances and reasonable inferences therefrom may support a finding of waiver." *Id.* at 954; *Wright v. State,* 374 S.W.3d 564, 579 (Tex.App.—Houston [14th Dist.] 2012, pet. ref'd).

[8]    Effective April 1, 2015, Rule 511 has been amended with the design of aligning Texas law with federal law on waiver of privilege by voluntary disclosure. Misc. Docket No. 14–9232 (Tex. Nov. 19, 2014); *see also* TEX.R. EVID. 511 cmt. (2015). Rule 511(1) as quoted above remains as part of the "General Rule" as stated in the new Rule 511(a).

 **[12]** **[13]** **[14]** **[15]** Courts have recognized several circumstances in which the waiver of a privilege is implied. Consistent with Rule 511's acknowledgement that consent to disclosure of "any significant part" of a privileged matter may constitute waiver of the whole, a privilege may not be waived selectively to disclose only such evidence as may be beneficial to the party holding the privilege.[9] In this sense, a privilege cannot be used simultaneously "as a shield and a sword": after a partial disclosure is used as a sword to gain litigation advantage, the privilege cannot then be used to shield the remainder of the privileged communication.[10] With specific reference to the attorney-client communication privilege, it may be implicitly waived by raising issues regarding the performance of counsel,[11] particularly if an issue is injected into the case which requires the attorney's testimony.[12] And a defense based on an assertion of good-faith reliance on the advice of counsel also has been held to impliedly waive the attorney-client communication privilege.[13] The touchstone of these various theories of implied waiver is that some litigation conduct requires, in fairness, that the remainder of the privileged communication be divulged.[14] The scope of an implied waiver of privilege is a legal question to be determined under the rules of evidence,[15] and thus it is not necessarily defined by the client's own articulation of the scope of privilege she intends to waive while at the same time authorizing disclosure of privileged communications considered helpful to her.

[9]    *See Rodriguez v. State,* 130 Tex.Crim. 438, 94 S.W.2d 476, 479–80 (1936) (finding implied waiver of attorney-client privilege and admitting attorney's testimony about guilty plea, over objection, when appellant testified that

former guilty plea was made on attorney's advice); *Jones v. State,* 181 S.W.3d 875, 878 (Tex.App.—Dallas 2006, pet. ref'd); *Carmona v. State,* 947 S.W.2d 661, 664 (Tex.App.—Austin 1997, no pet.); 1 MCCORMICK ON EVIDENCE § 93 (7th ed. 2013) ("Waiver may be found ... from conduct such as partial disclosure which would make it unfair for the client to invoke the privilege thereafter."); *cf. Wilkens v. State,* 847 S.W.2d 547, 551 (Tex.Crim.App.1992) (Appellant's Fifth Amendment rights were not violated when he introduced part of psychiatric examination evidence to prove insanity defense and State introduced testimony from examining psychiatrists to rebut his presentation of defense); *Draper v. State,* 596 S.W.2d 855, 857 (Tex.Crim.App. [Panel Op.] 1980) ("Once having related part of the facts of the transaction, a witness should not be permitted to assert a Fifth Amendment privilege to prevent disclosure of additional relevant facts."); *Stephens v. State,* 59 S.W.3d 377, 380 (Tex.App.—Houston [1st Dist.] 2001, pet. ref'd); *Aetna Cas. & Surety Co. v. Blackmon,* 810 S.W.2d 438, 440–41 (Tex.App.—Corpus Christi 1991, orig. proceeding) (waiver found when holder of privilege deliberately revealed privileged matter while preparing an expert witness to testify).

10    *See In re Lott,* 424 F.3d 446, 454 (6th Cir.2005) ("litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case"); *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir.2003); *In re von Bulow,* 828 F.2d 94, 103 (2d Cir.1987); *see also Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) ("The privilege takes flight if the relation is abused."); *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 163 (Tex.1993) ("In an instance in which the privilege is being used as a sword rather than a shield, the privilege may be waived.").

11    *See Lott,* 424 F.3d at 452–53; *Bittaker,* 331 F.3d at 718–19 (citing *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888)); *see also U.S. Fire Ins. Co. v. Asbestospray, Inc.,* 182 F.3d 201, 212 (3d Cir.1999) (privilege waived when party "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue") (quoting *Rhone–Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994)); *Garcia v. Zenith Elecs. Corp.,* 58 F.3d 1171, 1175 n. 1 (7th Cir.1995) (noting that "the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation"); *Developments in the Law–Privileged Communications, Implied Waiver,* 98 HARV. L.REV.. 1629, 1638 (1985) ("The privilege is

held to be waived when a client attacks the quality of his attorney's advice....").

12    *See Lott,* 424 F.3d at 453 (citing *Johnson v. Alabama,* 256 F.3d 1156, 1178 (11th Cir.2001). This particular means of implied waiver often arises through allegations of ineffective assistance. *See, e.g., Bittaker,* 331 F.3d at 716–17; *Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974) ("When a client calls into public question the competence of his attorney, the privilege is waived."); *Youkers v. State,* 400 S.W.3d 200, 212 (Tex.App.—Dallas 2013, pet. ref'd) ("Youkers necessarily placed in issue privileged communications when he argued his attorney breached her legal duty to provide effective assistance of counsel").

13    *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991); *see also United States v. Workman,* 138 F.3d 1261, 1263–64 (8th Cir.1998); *Livingstone v. N. Belle Vernon Borough,* 91 F.3d 515, 536–37 (3rd Cir.1996); 1 MCCORMICK, *supra,* § 93 ("if a party interjects the 'advice of counsel' as an essential element of a claim or defense, then that party waives the privilege as to all advice received concerning the same subject matter").

14    *See, e.g., Bittaker,* 331 F.3d at 719 ("courts and commentators have come to identify this simple rule as the fairness principle"); *Bilzerian,* 926 F.2d at 1292 ("the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications"); *see also United States v. Miller,* 600 F.2d 498, 501 (5th Cir.1979) ("We obviously cannot condone a practice that enables a defendant or any witness, after giving the jury his version of a privileged communication, to prevent the cross-examiner from utilizing the communication itself to get at the truth."). Consistent with this principle, the recent amendment to Texas Rule of Evidence 511, effective April 1, 2015, provides that when a voluntary disclosure covered by the attorney–client privilege is made in a state proceeding, the waiver extends to undisclosed communications only if:

    (A) the waiver is intentional;

    (B) the disclosed and undisclosed communications or information concern the same subject matter; and

    (C) they ought in fairness be considered together.

    TEX. R. EVID. 511(b)(1).

15    *Cf. Granada Corp. v. Honorable First Court of Appeals,* 844 S.W.2d 223, 225 (Tex.1992) (orig.proceeding) (acknowledging trial court must "interpret legal rules" in evaluating waiver of privilege).

**\*10** **[16]** All of these considerations are implicated by this case. Bailey's defense theory was reasonable mistake.

That theory was substantially predicated on her reliance on the counsel she claimed she received from her attorney. [16] In the course of examining her former lawyer to establish her legal defense, Bailey stated an intention to limit the scope of her waiver of the privilege. Sasser sought to exploit that attempted limitation through selective disclosure, eliciting Roberts's testimony only about communications expected to be helpful to the defense theory—a tactic which was harshly critical of the witness's professionalism. Through his questions Sasser disclosed communications about the proposed Brazoria County representation, using that testimony to portray the advice as tainted by the desire to collect a fee. His questions also caused the disclosure of communications concerning the need to actually appear for the Harris County hearing, which he depicted as inadequate relative to the risk of not appearing, as well as confused by the effect of the prior bond revocation. All this evidence was selectively elicited and offensively used in furtherance of the strategy of proving the reasonable-mistake defense.

[16]    The dissent suggests that "[p]rior to Sasser's cross-examination of Roberts during which confidential evidence related to the extraneous offense in Jefferson County was disclosed, there was *no evidence* that appellant blamed her mistaken belief on advice of counsel or that Roberts ever told her that she did not need to appear at trial." Such evidence would not be necessary for the trial court to conclude that Bailey had waived privilege by consenting to disclosure of a "significant part" of her attorney communications, *see* TEX. R. EVID. 511, but regardless, a review of the entire trial record shows otherwise. As early as voir dire, defense counsel previewed the reasonable-mistake trial strategy by asking the venire panel whether there was "any reason" they could imagine "someone might not show up for court." Before Roberts was called to the stand, Sasser cross-examined the court coordinator about the procedures applied when a defendant fails to appear, and asked: "If the defense attorney were to come to you and say: Hey, look, I just forgot to tell my client, my bad, my mistake, is that any type of problem?" In response, the coordinator stated: "They need to address it with the Judge." Then before any testimony was elicited about attorney-client communications relating to the Jefferson County charge, Sasser used his cross-examination to suggest that Roberts failed to adequately advise Bailey about the importance of appearing for the pretrial hearing and the potential consequences of failing to appear. Accordingly, it is not the case, as apparently suggested by the dissent, that the defense theory of reasonable mistake due to reliance on counsel arose merely as an

afterthought to mitigate the damage after defense counsel deliberately elicited "confidential evidence related to the extraneous offense in Jefferson County," or that the theory of reasonable mistake fortuitously sprang from the testimony of the bail bondsman.

Bailey's apparent desire to exclude evidence about the Jefferson County communications constituted an assertion of the privilege as a shield against the use of what turned out to be prejudicial information divulged as part of the broader context of the representation: that Roberts actually had documented his significant efforts to inform and advise her about the consequences of a failure to appear. Those communications were interconnected with communications about the Harris County case in both time and substance. Bailey failed to appear for a court date in Harris County less than a week after she failed to appear in Jefferson County, against Roberts's strongly worded advice which expressly warned that a failure to appear "necessarily complicates your Harris County case." To affirmatively rely upon suggested deficiencies in the evidence of communications about the need to appear in Harris County while excluding the evidence about the need to appear in Jefferson County would leave an unfair and misleading impression that Roberts had not adequately advised Bailey about the serious implications of failing to appear.

**\*11**   The decision to divulge a substantial part of her privileged communications to establish a defense of reasonable mistake in this case—for which Bailey gave express consent—was itself sufficient to waive privilege as to the additional related and relevant interwoven communications. *See* TEX. R. EVID. . EVID. 511. That waiver was implied, and the proverbial door was opened, well before Sasser ever crossed the boundary of express consent through the questions now alleged to constitute deficient performance on his part. It was already implied by the time Sasser elicited the communications about the failure to appear in Jefferson County.

 **[17]    [18]    [19]** A waiver of privilege is narrowly construed, [17] and the reasonable-mistake defense was not a blanket waiver of all attorney-client communications, including ones unrelated to the mistake defense. [18] But by pursuing a strategy and persistently arguing that she had a reasonable excuse for her failure to appear based on her communications with her lawyer, Bailey did place all her communications with Roberts relevant to that particular subject at issue. This understanding of the challenged line of questions is essentially conceded on page 4 of the appellant's

brief, which concedes: "As part of her reasonable explanation defense, Bailey consented to waiver of the privilege regarding a charge in Brazoria County." Despite the self-serving limitations stated as part of Bailey's express consent, by asserting the defense she necessarily consented to waiver of all the related and interwoven communications, including those about the importance of appearing in Jefferson County.

17    "Implied waivers are consistently construed narrowly. Courts 'must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *In re Lott,* 424 F.3d at 453 (quoting *Bittaker,* 331 F.3d at 720). This is because "[a] broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote." *Bittaker,* 331 F.3d at 722.

18    *Cf. Marathon Oil Co. v. Moye,* 893 S.W.2d 585, 590 (Tex.App.—Dallas 1994, no writ) (voluntary disclosure of significant part of privileged material can result in implied waiver of privilege to other documents, though waiver does not automatically allow disclosure of all privileged materials).

In response to this implied-waiver analysis, the dissent attempts to distinguish this appeal from *Carmona v. State,* [19] observing that in *Carmona* the defendant's selective disclosure of privileged polygraph results related to "the defense of the same charged offense" (sexual assault and indecency with a child) as did the incriminatory statements made before the polygraph exam, which the defendant sought to protect from disclosure. Meanwhile in this appeal, the dissent emphasizes that "Roberts represented appellant in two separate cases"—i.e., separate charges of fraudulent use or possession of identifying information filed in Jefferson and Harris Counties—and "[d]iscussions that the two may have had about one case would not be relevant and admissible as to the other." The distinction of two separate charges makes no difference in this appeal, in which the communications on both of two charges had relevance to Bailey's reasonable-excuse defense to a separate third charge, arising from her later failure to appear in court as required in Harris County. The attorney-client communications about the need to appear had no relevance and would not have been admissible on either of the original Jefferson County and Harris County charges. Those communications only gained relevance and became admissible when Bailey injected them into the trial on a separate charge in her attempt to prove that she had a reasonable excuse for failing to appear.

19    947 S.W.2d at 664.

***12** [20] The trial judge ruled that Bailey had waived her privilege. The record supports that ruling. Like other evidentiary rulings, a trial court's ruling determining that a privilege has been waived is reviewed for abuse of discretion, is upheld when it is within the zone of reasonable disagreement, and may not be reversed "solely because the appellate court disagrees with the decision." [20] Considering the totality of the circumstances and the reasonable inferences therefrom, the trial court did not abuse its discretion in finding implied waiver. The record does not provide a firm foundation to affirmatively establish that confidential communications were elicited without Bailey's actual consent, as the record is conflicted on that subject. [21] Ordinarily, we may presume that an appellant's trial lawyer fully explained the possible consequences of eliciting evidence at trial. [22] Thus, at this procedural stage and on this record, there is no need to address whether it would have been constitutionally deficient performance in this case for trial counsel to inadvertently effect an implied waiver of privilege by a selective disclosure of privileged communications, when the record reflects that the selective disclosure was expressly authorized by the client, but the record is silent as to whether counsel actually and correctly advised his client about the legal effect of the selective disclosure (other than counsel's twice-repeated assurance to the court that he had discussed the matter with the defendant).

20    *Cameron,* 241 S.W.3d at 19–20; *Carmona,* 947 S.W.2d at 664. Due to the fact-specific nature of the inquiry, courts also have reviewed implied waiver rulings in particular for abuse of discretion. *See, e.g., Davis,* 856 S.W.2d at 164 (reviewing trial court's decision on waiver of attorney–client privilege for abuse of discretion); *In re Grand Jury Proceedings,* 219 F.3d 175, 183 (2d Cir.2000) ("Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted."); *but see United States v. Mendelsohn,* 896 F.2d 1183, 1188 (9th Cir.1990) (reviewing de novo court's holding that privilege had been waived).

21    Bailey's depiction of the record in this regard is materially incomplete in its failure to acknowledge and address the totality of the circumstances and the reasonable inferences therefrom, including aspects of the record that do suggest an actual waiver of the privilege as found by the trial court, her statements on

the record notwithstanding. Our dissenting colleagues reach the opposite conclusion by ignoring the implied-waiver doctrine and by accepting Bailey's and Sasser's statements as the conclusive facts concerning their communications. The trial judge, who was in a better position in the courtroom to observe these events as they transpired, concluded otherwise, and the dissent does not contend that there was no evidence to support that conclusion. The case identified in the dissent, *Ex parte Varelas,* 45 S.W.3d 627 (Tex.Crim.App.2001), provides no authority for overriding the trial judge's discretion as to this issue. Unlike Bailey's direct appeal, which comes to us without the benefit of a post-trial evidentiary hearing, *Varelas* was an appeal from the denial of a post-conviction application for a writ of habeas corpus. *Varelas,* 45 S.W.3d at 629. On the direct appeal in that case, the Court of Criminal Appeals had rejected the appellant's claim of ineffective assistance, noting the inadequacy of the record. *Id.* at 632 (citing *Varelas v. State,* No. 72178, slip op. at 10–11 (Tex.Crim.App. Mar. 4, 1997) (not designated for publication)). The crucial *Varelas* affidavit was submitted after trial had concluded, in the context of the post-conviction habeas proceeding. On the particular facts of that case, the Court concluded that the trial court's finding that trial counsel had used sound trial strategy in not requesting a limiting instruction relating to evidence of the appellant's extraneous acts was "unsupported by the record." *Id.* at 632 n.5; *see also id.* at 646–47 (Holland, X, concurring in the denial of rehearing) ("I stand by the Court's opinion that there is no evidence in the record to suggest that the failure to request limiting instructions was the result of trial strategy."). *Varelas* thus involved a record that gave no support to the trial court's crucial factual finding in support of its ruling, and as such it is readily distinguishable from this direct appeal and its conflicted record relating to the waiver issue.

22    *See Robertson v. State,* 187 S.W.3d 475, 484 (Tex.Crim.App.2006) (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *see also Carmona,* 947 S.W.2d at 664 (concluding based on evaluation of record that it was "not irrational for the trial court to infer" that the client authorized a disclosure of privileged communications, "hoping for favorable results").

**\*13** **[21]** Given the statutory defense of reasonable mistake and counsel's evident strategy in advocating for an acquittal on that basis, this appeal does not conclusively establish that trial counsel's questions about Jefferson County were so outrageous that no reasonable attorney would have asked them. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced

as ineffective," *Rylander v. State,* 101 S.W.3d 107, 111 (Tex.Crim.App.2003), and that has not yet happened in this case outside the context of trial counsel's active, ongoing representation of Bailey. [23] Certainly the circumstances here are not comparable to other examples of alleged misconduct that the Court of Criminal Appeals has found insufficiently outrageous to support a finding of deficient performance in the absence of an explanation by counsel. [24]

23    *See also State v. Thomas,* 428 S.W.3d 99, 106 (Tex.Crim.App.2014) ("When counsel faces an ineffective-assistance claim, the attorney-client privilege is waived, and trial counsel has the opportunity to explain his actions."); *Bone v. State,* 77 S.W.3d 828, 836 (Tex.Crim.App.2002) ("Under our system of justice, the criminal defendant is entitled to an opportunity to explain himself and present evidence on his behalf. His counsel should ordinarily be accorded an opportunity to explain her actions before being condemned as unprofessional and incompetent.").

24    *See, e.g., Menefield v. State,* 363 S.W.3d 591, 593 (Tex.Crim.App.2012) (failure to object to an infringement of the client's right to confront witnesses); *Goodspeed v. State,* 187 S.W.3d 390, 393–94 (Tex.Crim.App.2005) (failure to ask questions on voir dire); *Thompson,* 9 S.W.3d at 814 (failing to continue objecting to significant hearsay).

Bailey also cannot demonstrate harm under the second prong of *Strickland.* Despite Sasser's statements to the effect of "falling on his sword," after unsuccessfully moving for a mistrial he subsequently made the strategic decision to continue to elicit confidential communications from Roberts and to use them to argue the reasonable-mistake defense. The record does not provide a firm foundation for a claim that Bailey was harmed by this, considering that the evidence was all but conclusive as to her guilt on the failure to appear charge, save the possibility of persuading the jury she had a reasonable excuse.

We overrule Bailey's first issue alleging ineffective assistance of counsel.

**II. Mistrial**

**[22]** In the alternative, Bailey contends that the trial court abused its discretion when it denied her motion for mistrial. She claims that Roberts's disclosure of privileged information was highly prejudicial, that no curative measures were taken

by the court, and that the disclosure likely affected the jury's verdict.

 **[23]** In addition to our explanation, above, that the privilege already had been waived before the line of questions that gave rise to the motion for mistrial, we also note that the testimony of which Bailey now complains was introduced by her own attorney. "[A] defendant may not complain of evidence elicited by [her] own attorney." *Ex parte Ewing,* 570 S.W.2d 941, 948 (Tex.Crim.App. [Panel Op.] 1978); *see also Durroughs v. State,* 672 S.W.2d 860, 873 (Tex.App.— Corpus Christi 1984). Therefore, the trial court did not abuse its discretion in refusing to grant a mistrial.

### Conclusion

We affirm the judgment of the trial court.

En banc reconsideration was requested. Tex.R.App. P. 49.7.

A majority of the justices of the Court voted in favor of reconsidering the case en banc.

The en banc court consists of Chief Justice Radack, and Justices Jennings, Keyes, Higley, Bland, Massengale, Brown, Huddle, and Lloyd.

Justice Massengale, writing for the majority of the en banc court, joined by Justices Bland, Brown, Huddle, and Lloyd.

Chief Justice Radack, joined by Justices Jennings, Keyes, and Higley, dissenting.

Sherry Radack, Chief Justice, dissenting.

Because I believe that no competent attorney would employ a trial strategy that calls for eliciting privileged communications over his client's clearly-stated objection on the record, and because the record clearly supports the conclusion that defense counsel did so in this case, I respectfully dissent.

A client may refuse to disclose or allow disclosure of confidential communications made among the client, the client's representatives, the attorney, and the attorney's representatives to facilitate rendition of professional legal services to the client. TEX.R.CRIM. EVID. 503(b). A communication is confidential if it is not intended to be disclosed to persons other than those to whom disclosure is made to further rendition of professional legal services to the client. TEX.R.CRIM. EVID. 503(a)(5). The privilege belongs to the client. TEX.R.CRIM. EVID. 503(b),(c); *Burnett v. State,* 642 S.W.2d 765, 770 (Tex.Crim.App.1982). The client can waive the privilege by voluntarily disclosing or consenting to the disclosure of a significant part of the privileged matter. TEX.R.CRIM. EVID. 511. Disclosure by the attorney does not waive the privilege absent the client's consent. *See Cruz v. State,* 586 S.W.2d 861, 865 (Tex.Crim.App.1979). To waive the privilege, the defense attorney must act with his client's consent when disclosing the privileged materials. *See* TEX.R.CRIM. EVID. 503(b), (c). Waiver may be inferred from the totality of the circumstances and reasonable inferences. *Carmona v. State,* 941 S.W.2d 949, 954 (Tex.Crim.App.1997).

The State cites a series of cases in which, by their silence, defendants were held to have acquiesced to their attorney's waiver of the attorney-client privilege or some other right or admission. *See Fuller v. State,* 835 S.W.2d 768, 771 (Tex.App.–Eastland 1992, pet. ref'd), *disapproved on other grounds, Carmona,* 941 S.W.2d at 953–54 (holding defendant consented to disclosure of privileged materials when lawyer disclosed same to deputy in defendant's presence and defendant said nothing); *Drimmer v. Appleton,* 628 F.Supp. 1249, 1251–52 (S.D.N.Y.1986) (holding attorney-client privilege waived when defendant voluntarily permitted his attorney to testify to privileged information without objecting); *see also Stribling v. State,* 542 S.W.2d 418, 419 (Tex.Crim.App.1976) (holding defendant acquiesced to stipulation entered into by his attorney in court); *Chaney v. State,* 464 S.W.2d 653, 656 (Tex.Crim.App.1971) (same); *Genzel v. State,* 415 S.W.2d 919, 921–22 (Tex.Crim.App.1967) (same); *Griffith v. State,* 635 S.W.2d 145, 147 (Tex.App.–Houston [1st Dist.] 1982, no pet.) (same); *see also Alvarado v. State,* 912 S.W.2d 199, 214–15 (Tex.Crim.App.1995) (holding that testimony was admissible as an adoptive admission because appellant was present when made and clearly called for response); *Tucker v. State,* 771 S.W.2d 523, 535–36 (Tex.Crim.App.1988) (same).

However, in this case, appellant was not silent as to her position on the attorney-client privilege. She repeatedly stated to the court, "I'm only waiving privilege to the one case that was filed against me in Brazoria County ..." and "[j]ust only that." And, when her defense counsel started questioning Roberts outside the scope of this limited waiver of the attorney-client privilege, appellant sent defense counsel a

note that said, "We can deal with this without bringing in Jefferson County." Defense counsel admits that "[d]uring the exchange with the—with Mr. Roberts, my client was attempting to tell me something, but because I was in the heat of questioning, I was intent on the questioning, I wasn't listing to her intently." Defense counsel also stated on the record that his questioning of Roberts outside the scope of the authorized waiver was "against [appellant's] wishes."

Based on the record before us, it cannot be said that appellant sat by and acquiesced in defense counsel's disclosure of confidential information. Appellant specifically defined the parameters of her waiver, and when defense counsel exceeded those parameters, she attempted to stop him. She did everything but stand up in open court and disrupt the court proceedings in an attempt to preserve her attorney-client privilege.

Any suggestion that appellant *might* have authorized defense counsel to disclose her privileged communications during whispered conversations with defense counsel during the trial is not supported, but indeed, is controverted by the record. The only two people privy to the whispered discussions during trial—appellant and defense counsel—have already stated on the record that no agreement to waive privilege was ever reached by appellant and defense counsel. In this circumstance, no motion for new trial hearing is required —the contents of those communications between defense counsel and appellant are already in the record, and both parties to the communications testified that appellant did not waive the privilege.

Nor is there anything in the record that leads us to conclude that the trial court disbelieved defense counsel's confession of error. It is unreasonable to believe that defense counsel would "fall on his sword" by falsely confessing to committing legal malpractice and ethical violations in an attempt to provoke a mistrial for a client who had not yet been convicted. Indeed, the Court of Criminal Appeals has found the first prong of *Strickland* met, *without the necessity of a credibility determination,* when trial counsel filed an affidavit in which he stated that he had no trial strategy in failing to request a jury instruction and that his actions were "simply an oversight." *See Ex parte Varelas,* 45 S.W.3d 627, 632 (Tex.Crim.App.2001).

Although not raised by the State, either at trial or on appeal, [1] the majority concludes that, by raising a "reasonable-excuse" defense strategy, appellant waived the attorney-client

privilege and "placed in issue all of her communications with her lawyer about the need to actually appear for hearings as required by the court." Essentially, the majority concludes that appellant could not waive privilege as to the Brazoria County charges without also waiving privilege as to the Jefferson County charges, and that to attempt to do so would allow appellant to use the attorney-client privilege as both a sword and a shield.

[1]     An appellate court must review a trial court's ruling on a motion for mistrial in light of the arguments before the trial court at the time it ruled. *Wead v. State,* 129 S.W.3d 126, 129 (Tex.Crim.App.2004).

In *Carmona v. State,* 947 S.W.2d 661, 664 (Tex.App.–Austin 1997, no pet.) the defense hired a polygraph examiner, who conducted both a pretest interview and a polygraph test on the defendant. *Id.* at 662–63. Defense counsel disclosed the results of the polygraph to a prosecutor in an attempt to get the charges dismissed, but objected at trial when the State attempted to introduce portions of the pretest interview. *Id.* After finding that the defendant consented to the disclosure of the results to the prosecutor, the court held that "the pretest interview and the test were essentially one communication [,]" and that the defendant could "not waive the privilege as to only the favorable parts." *Id.* at 664.

This case is not like *Carmona,* in which the defendant attempted to use parts of a confidential conversation to her advantage, while excluding other parts, *all in the defense of the same charged offense.* There, both parts of the confidential conversation were clearly relevant to the charged offense. Here, Roberts represented appellant in two separate cases—one in Harris County and one in Jefferson County. Discussions that the two may have had about one case would not be relevant and admissible as to the other. Indeed, by affirmatively introducing evidence that appellant planned not to appear in Jefferson County either, defense counsel injected harmful evidence of character conformity that the State generally would have been unable to present. *See* TEX.R. EVID. 404(b).

In contrast, the Brazoria case that appellant consented to disclose was highly relevant to the Harris County case because it served as the basis for the September 8 revocation of her bond, and it is the September 8 revocation that led to appellant's "reasonable belief" argument that she no longer needed to show up in court on September 21. Appellant believed that she could not "jump" a bond that had already been revoked. On the day she failed to appear in Jefferson

County, appellant's bond had not yet been revoked, so its relevance to the issue of appellant's "reasonable excuse" defense would be minimal, if any, because of the differing circumstances proceeding appellant's failure to appear in each county. In sum, appellant was not using confidential communications about Brazoria County as a sword, while using confidential communications about Jefferson County as a shield, because only Brazoria County had relevance to the charged offense in Harris County.

The majority also claims that appellant invoked a "reasonable excuse defense" by claiming "that [Roberts] failed to tell her that she had to appear[,]" and that such action was "a plausible trial strategy." The majority mischaracterizes appellant's reasonable excuse defense as an attack on Roberts and argues that her reasonable excuse defense was "substantially predicated on [Bailey's] reliance on the counsel she claimed she received from [Roberts]." While appellant did preview her reasonable excuse defense during voir dire, at no time prior to Sasser's unauthorized disclosure did appellant suggest that Roberts was the source of her belief that she did not have to go to court because her bond had been revoked. The first evidence regarding a possible source for appellant's belief that she did not have to go to trial after her bond was revoked was appellant's bailbondsman, not Roberts. It was only after defense counsel "overstepped [his] bounds" and mentioned the Jefferson County proceeding was there any evidence suggesting that Roberts was a source of appellant's mistaken belief.

Prior to Sasser's cross-examination of Roberts during which confidential evidence related to the extraneous offense in Jefferson County was disclosed, there was *no evidence* that appellant blamed her mistaken belief on advice of counsel or that Roberts told her that she did not need to appear at trial. Indeed, the first evidence on this issue was elicited from Stim Bowie, appellant's bail bondsman, during the following exchange with defense counsel, Sasser:

[Sasser]: Do you remember telling me: I was a little confused because the Court had revoked her bond on the 8th, but then they forfeited it on the 21st, and you said you had never even seen that before; do you remember telling me that?

[Bowie]: Yes, sir, I did.

\* \* \* \*

[Sasser]: Sir, why, when I was in your office, did you tell me that when you looked on your computer and saw her bond revoked on September 8th for her case it was a non-issue at that point, she was no longer in custody, there was a warrant for her arrest, and for you—that nobody was asking you for the $15,000? Do you remember telling me that?

[Bowie]: Yes, sir, but they changed—it was a forfeiture. There's a difference. You're saying revoked and bond forfeiture. Those are two different things.

[Sasser]: Sir, remember telling me you didn't know that at the time? Remember you told me you just found that out on this case?

[Bowie]: That's correct.

[Sasser]: What did you find out in this case that you didn't know before about the difference between revocation and forfeiture?

[Bowie]: I didn't understand that if you—if your bond was already revoked, you still cannot forfeit that bond if you don't show up on that day. That's what I did not know.

[Sasser]: You've been doing this for ten years and you didn't understand how that worked, did you?

[Bowie]: No, sir.

[Sasser]: Certainly, this defendant wouldn't be expected to know that?

\* \* \* \*

[Sasser]: And did you further tell her that revocation by the Court, basically, cancels your contract with her, there's nothing else for her to perform, no other performance needed in that contract?

[Bowie]: That is correct.

Appellant's defense was that her belief that the September 8 revocation of her bond excused her from the obligation to appear on September 21 was reasonable, especially since Bowie, a 10–year–bailbondsman, believed likewise. And, more importantly, the defense could have be established without divulging any confidential information other than the fact that there was a warrant for appellant's arrest in Brazoria County, which led to the revocation of her bail on September 8 in Harris County.

The majority states that "[appellant] stated an intention to limit the scope of her waiver of the privilege[,]" but "Sasser sought to exploit that attempted limitation through selective disclosure[.]" Even if I were to agree with the majority's conclusion that Sasser's trial strategy waived appellant's attorney-client privileged through his cross-examination of Roberts about the Jefferson County proceeding, such trial strategy was clearly undertaken without appellant's consent. No competent trial attorney would employ a trial strategy that requires eliciting privileged communications, or waiving a privilege as to those communications, over his client's clearly-stated objection on the record. Put simply, if Sasser's trial strategy required waiving a privilege that his client did not want waived, his representation of her was ineffective, especially since it caused the admission of an otherwise inadmissible extraneous offense.

In light of these considerations, I conclude that appellant did not voluntarily waive the attorney-client privilege as to the Jefferson County proceedings and any discussions with Roberts about that extraneous offense. The decision to waive attorney-client privilege belongs to the client, and no reasonable attorney would employ a trial strategy that strips his client of that right. As such, this is one of those rare instances in which "no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of his or her subjective reasoning." *Lopez v. State,* 343 S.W.3d 137, 143 (Tex.Crim.App.2011). Because the majority holds otherwise, I respectfully dissent.

**All Citations**

--- S.W.3d ----, 2015 WL 4497773

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.